Glenda SIMMONS (Jones),
Plaintiff–Appellant,

v.

George William SIMMONS, Defendant,

Isaac Thomas Simmons and Wife, Sylvia Simmons, Intervening Petitioners/Respondents/Appellees.

Supreme Court of Tennessee,
at Knoxville.

May 30, 1995.

Denise S. Terry, Morristown, Nicholas D. Hare, Nashville, for plaintiff-appellant.

Stephenson Todd, Todd & Dossett, P.C., Kingsport, for intervening petitioners/appellees.

Charles W. Burson, Atty. Gen. and Reporter, Dianne Stamey Dycus, Sr. Counsel, Nashville, for Atty. Gen.

## OPINION

REID, Justice.

This is a grandparents' visitation case. It presents a dispute between the natural mother and adoptive father of a child presently five years old and the parents of the child's natural father. The Court of Appeals, finding that there had been no change in circumstances, refused to terminate the court authorized visitation privileges of the parents of the natural father, upon the application of the mother and adoptive father. Because the principles of parental rights discussed in *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn.1993), are also applicable to this case, the decision of the Court of Appeals is reversed.

The natural father abandoned the child's mother, the appellant, prior to the child's birth on February 28, 1990. Soon after the child's birth, the trial court awarded the mother a divorce and custody of the child. The father's right to visitation was conditioned upon his having one of his parents, the respondents in this case, transport the child between the mother and the father. Subsequently, upon respondents' petition, they were granted visitation privileges pursuant to Tenn.Code Ann. § 36–6–301 (1991), and, in the same proceeding, upon the appellant's petition, the court terminated the natural father's parental rights on the ground of abandonment.

On September 18, 1992, the mother married Loyall F. Jones, who, in a separate proceeding, adopted the child. The final or-

der of adoption was entered on February 23, 1993.

The appellant responded to the respondents' motion that she be held in contempt for refusing to allow visitation as provided in the court order, with a petition that the respondents' visitation privileges be terminated. On a record in which evidence regarding the relationship between the respondents and the child is in substantial conflict, the trial court found that the appellant failed to carry the burden of proving that continued visitation is not in the best interest of the child. The Court of Appeals affirmed in a memorandum opinion.

Resolution of the issue presented begins with a review of the decision in *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn.1993), in which the Court held:

Article I, Section 8 of the Tennessee Constitution protects the privacy interest of these parents in their child-rearing decisions, so long as their decisions do not substantially endanger the welfare of their children. Absent some harm to the child, we find that the state lacks a sufficiently compelling justification for interfering with this fundamental right. When applied to married parents who have maintained continuous custody of their children and have acted as fit parents, we conclude that court interference pursuant to T.C.A. § 36–6–301 constitutes an unconstitutional invasion of privacy rights under the Tennessee Constitution.

*Id.* at 582.

Neither party has referred the Court to a case in which the precise issue presented here has been decided. All decisions relied upon by the appellees, except *Preston v. Mercieri*, 133 N.H. 36, 573 A.2d 128 (1990), involve the construction of state statutes without any constitutional analysis, and provide little guidance. *See In the matter of CGF*, 168 Wis.2d 62, 483 N.W.2d 803 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992); *Puleo v. Forgue*, 610 A.2d 124 (R.I.1992); *In re Groleau*, 585 N.E.2d 726 (Ind.App. 3 Dist.1992); *In Interest of R.C.E.*, 535 So.2d 673 (Fla.App.1988); *Santaniello v. Santaniello*, 18 Kan.App.2d 112, 850 P.2d 269 (1992).

The respondents urge the Court to adopt the rationale of *Preston v. Mercieri*, in which the constitutional issue was discussed. The Supreme Court of New Hampshire recognized that under the common law, "parental authority was generally deemed supreme with regard to the upbringing of offspring, and courts refused to interfere with child rearing decisions that excluded grandparents and prohibited meaningful contact with grandchildren." *Preston v. Mercieri*, 573 A.2d at 130. That court further acknowledged that, "the Supreme Court of the United States has recognized a private realm of family life which the state cannot enter," and that the Supreme Court "has sustained the parenting right, like the right to marry and establish a home, as a fundamental liberty interest protected by the Fourteenth Amendment." *Id.* at 131. The New Hampshire court concluded, "Thus, parents enjoy a constitutionally protected right to raise their children as they see fit, unfettered by *undue* state intrusion." *Id.* (emphasis added). However, that court imposed narrow limits upon the constitutional right recognized and held: "parental rights are not absolute, but are subordinate to the State's *parens patriae* power, and must yield to the welfare of the child." *Id.*

In that case, in which the natural father had died while divorce proceedings were pending, the New Hampshire court found that visitation privileges which had been granted to the grandparents were not automatically terminated by the mother's remarriage and the stepfather's adoption of the child. There was no claim that the child was in substantial danger of harm. The statute did not authorize a grant of visitation privileges to the grandparents upon those facts, and the court stated that the refusal to terminate the grandparents' privileges was not based upon their rights or the kinship between the child and them, but upon the child's best interest.

After an extensive review of prior decisions of this Court and cases from other jurisdictions, the Court in *Hawk v. Hawk* expressly rejected the proposition that the courts may engage in best interest analysis

without first determining the threshold issue—substantial danger of harm to the child. The Court stated:

> In light of [the constitutional right of privacy acknowledged in *Davis v. Davis*, 842 S.W.2d 588 (Tenn.1992)], we believe that when no substantial harm threatens a child's welfare, the state lacks a sufficiently compelling justification for the infringement on the fundamental right of parents to raise their children as they see fit. Thus, we find the statute to be unconstitutional under Article I, Section 8 of the Tennessee Constitution, as applied to this married couple, whose fitness as parents is unchallenged.

855 S.W.2d at 577.

The respondents contend that the constitutional principle stated in *Hawk* is not applicable to the instant case. They insist that the decision in *Hawk* does not preclude a best interest of the child analysis because the divorce of the child's natural parents justifies the state's interference with parenting decisions by the mother and adoptive father. They insist that the constitutional protection is limited to married, natural parents who have maintained continuous custody of their children and whose fitness as parents has not been challenged. Respondents contend that the constitution does not preclude the state from interfering with parenting decisions where, as in the present case, the child has been adopted by a step-parent. They emphasize that the family in *Hawk* was intact, the parents were married natural parents whose fitness as parents was unchallenged, the parents had maintained continuous custody of the children, and the children were not subject to any substantial danger of harm. There had been no judicial intrusion into the *Hawk* family until the trial court, over the objection of the parents, granted visitation rights to the paternal grandparents pursuant to Tenn.Code Ann. § 36–6–301.

Though not specifically stated, the respondents' essential argument is that the right of an adoptive parent to make parenting decisions is inferior to the right of a natural parent. That position is contrary to the stated law and policy of this state, as well as human experience. Even though some significant facts are different in the two cases, the legal principles upon which *Hawk* is based are applicable to this case also. The Court in *Hawk* began its determination of the validity of the statute by looking "first to the nature of the right at stake." *Id.* at 577. The Court, relying upon *In re Knott*, 138 Tenn. 349, 355, 197 S.W. 1097, 1098 (1917), found "[t]he relations which exist between parent and child are sacred ones." *Hawk v. Hawk*, 855 S.W.2d at 578. And, relying upon *Davis v. Davis*, 842 S.W.2d 588 (1992), the Court found that the constitutional right to privacy fully protects "the right of parents to care for their children without unwarranted state intervention." The relationship between an adoptive parent and child is no less sacred than the relationship between a natural parent and child, and that relationship is entitled to the same legal protection. Tenn. Code Ann. § 36–1–126(a) (Supp.1994) provides:

> The signing of a final order of adoption establishes from that date the relationship of parent and child between the adoptive parents and the adopted child as if the adopted child had been born to the adoptive parents in lawful wedlock and the adopted child is deemed the child of such parents, the same as if the child had been born to them in lawful wedlock, for all legal consequences and incidents of the natural relation of parents and children.

■ Adoptive parents are entitled to the same constitutional protection of parenting decisions as natural parents.

■ The Court in *Hawk* reviewed relevant legal precedents, which reflect traditions and policy dedicated to the protection of the family and the right of parents and children to develop their own personal and family values free from intrusion by the state. *Hawk v. Hawk*, 855 S.W.2d at 579. *See also In re Adoption of Female Child, Bond v. McKenzie*, 896 S.W.2d 546 (Tenn.1995); *Petrosky v. Keene*, 898 S.W.2d 726 (Tenn.1995). However, the Court found that a "compelling state interest" sufficient to overrule the parents' decisions, including those affecting the child's relations with grandparents, is the need to protect the child from a substantial danger of harm. The issue, then, is whether the child

in this case is exposed to a substantial danger of harm, which justifies the intervention of the Court into the parents' child rearing decisions.

The trial court did not find that the child was in danger of substantial harm. The record contains no evidence that the child was in danger of substantial harm. The court held that remarriage of the child's mother and adoption by the stepfather did not terminate the order granting visitation privileges to the grandparents, and based its decision on the finding that the appellant had failed to prove a change of circumstances on which to terminate the respondent's visitation privileges. Since change of circumstances is not the standard for determining the parents' right to refuse visitation to a non-parent, no useful purpose would be accomplished by reviewing in this opinion the trial court's decision that abandonment by the child by his natural father, remarriage by the mother, adoption of the child by the stepfather, and the existence of significant animosity between the child's parents and the natural father's parents is not sufficient change of circumstances.

Since the record shows that the threshold issue—danger of substantial harm—has not been established, the appellant and the adoptive father are entitled to constitutional protection of their parental rights.

The decision of the Court of Appeals is reversed, and the appellant's petition to terminate the respondents' visitation privileges is granted.

Costs are assessed against the respondents, Isaac Thomas and Sylvia Simmons.

ANDERSON, C.J., and DROWOTA, BIRCH, and WHITE, JJ., concur.