# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

| | | |
|---|---|---|
| **LOIS SMITH and CECIL SMITH,** | ) | Henderson County Chancery Court |
| | ) | No. 7166 |
| Appellants, | ) | |
| | ) | |
| VS. | ) | C. A. NO. 02A01-9608-CH-00193 |
| | ) | |
| **BETHEL MARIE (SMITH) SCHNEIDER,** | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| **ROGER ALLEN SMITH,** | ) | |
| | ) | |
| Appellee. | ) | |

**FILED**

Dec. 11, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

_____

From the Chancery Court of Henderson County at Lexington.
**Honorable Joe C. Morris, Chancellor**

**Lloyd R. Tatum**,
TATUM & TATUM, Henderson, Tennessee
Attorney for Appellants.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S** : (Concurs)
**LILLARD, J.** : (Concurs)

Lois Smith and Cecil Smith appeal from the trial court's denial of their petition seeking visitation rights with their grandson, Jonathon Allen Smith, pursuant to T.C.A. § 36-6-301.[1] The appellants are the parents of Roger Allen Smith whose marriage to Bethel Marie Smith (now Schneider) ended in divorce in April 1990. Jonathon Allen Smith was born to that marriage and was age 7 at the time of the hearing which is the subject of this appeal. Custody of Jonathon was awarded to his mother.

According to the statement of the evidence, Lois Smith testified that she visited weekly with Jonathon until the summer of 1994 when Jonathon's mother "just said I couldn't see him" with no explanation given. She further testified that Cecil Smith is the child's only living grandfather and he and Jonathon have a good relationship. They live about 20 miles from Jonathon and his mother and Jonathon enjoys fishing in the pond on their property and visiting with another grandson, age 12.

Appellants contend that the trial court erred in relying upon our supreme court's rulings in *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993) and *Simmons v. Simmons*, 900 S.W.2d 682 (Tenn. 1995). They contend that in *Hawk* the court merely held that the application of the statute was unconstitutional where married parents, whose fitness as parents is unchallenged, object to the grandparent visitation. It is their contention that the test to be applied in this case should be what is in the best interest of the child. We disagree. *Hawk* concluded that "Tennessee's historically strong protection of parental rights and the reasoning of federal constitutional cases convince us that parental rights constitute a fundamental liberty interest under Article I, Section 8 of the Tennessee Constitution." *Hawk* held T.C.A. § 36-6-301 to be an unconstitutional invasion of parents' privacy rights as afforded under the Tennessee Constitution when applied to the facts presented. That case involved a petition for grandparental visitation filed by the paternal grandparents against married parents who had maintained continuous custody of their children and whose fitness as parents went unchallenged. *Hawk*, 855 S.W.2d at 577, 582. *Hawk* determined that the parents possessed a

[1]The petition was filed in accordance with T.C.A. § 36-6-301 which states:

> **Grandparents' visitation rights**. -- (a) The natural or legal grandparents of an unmarried minor child may be granted reasonable visitation rights to the child during such child's minority by a court of competent jurisdiction upon a finding that such visitation rights would be in the best interests of the minor child.

constitutional right of privacy in parenting decisions not subject to interference from the state absent a showing of "substantial harm" to a child's welfare. *Id.* at 577. *Hawk* reasoned that there was no compelling state interest justifying interference with such right of parents absent this showing. *Id.* at 582. *Hawk* stated that without a showing of substantial harm to the child, "a court may not constitutionally impose its own subjective notions of the 'best interest of the child' when an intact, nuclear family with fit, married parents is involved." *Id.* at 579. To this end, *Hawk* declined to proceed with a "best interests of the child" analysis until and after the required showing of harm which the court viewed as the "sole protection that parents have against pervasive state interference in the parenting process." *Id.* at 580-81. Moreover, *Hawk* refused to assume that the grandparent-grandchild relationship always proves beneficial to the child as such assumption, "overlooks the necessity of a threshold finding of harm *before* the state can intervene in the parent-child relationship." *Id.* at 581.

*Simmons v. Simmons* involved a mother and adoptive father of a minor child who sought to terminate the court ordered visitation privileges of the child's paternal grandparents. *Simmons* concluded that the record before it contained no evidence that a substantial danger of harm threatened the child and, thus, found no compelling state interest justifying court intrusion upon the natural mother's and adoptive father's rights as parents to preclude a relationship between their child and the paternal grandparents. *Simmons*, 900 S.W.2d at 685.

This court recently addressed grandparent visitation in *Floyd v. McNeeley*, No. 02A01-9408-CH-00187 (Tenn. App. July 5, 1995), wherein the natural father of the children died and the paternal grandmother sought visitation. We stated:

> In view of the reasonings extended by our supreme court in *Simmons* and *Hawk*, we are convinced that [the mother's] right to parent her children as she sees fit, including a decision regarding a relationship between them and their grandmother, is no less greater than the right afforded to the married natural parents under *Hawk*. We conclude that the rights afforded to the parents in *Hawk* extend equally to [the mother] despite the death of her children's father and her subsequent remarriage. To this end, we do not view the breakup of the nuclear family, in and of itself, to constitute a substantial harm to a child sufficient to justify state interference with a fit parent's decision to preclude a relationship between that child and his/her grandparents.

*Floyd*, slip op. at 5.

In *Nale v. Robertson*, 871 S.W.2d 674 (Tenn. 1994), the court stated "the [plaintiffs'] position that this court in *Hawk* limited the protection of parental rights to 'an intact, nuclear family with fit parents' is untenable." *Nale*, 871 S.W.2d at 680.

We find no evidence in the record before us of substantial harm to the child. Therefore, there is no compelling state interest sufficient to justify state interference with the right of the child's mother as a parent to prevent contact between her child and the paternal grandparents.

While this court can fully appreciate the wants and desires of the petitioners in this cause to continue their relationship with their grandson, we are governed by the law. We would, however, encourage the mother on her own initiative to endorse a relationship between her son and his grandparents if she determines that it would best serve the child.

The judgment of the trial court is affirmed and the costs of this cause are taxed to the appellants, for which execution may issue if necessary.

_____
FARMER, J.


_____
CRAWFORD, P. J. (Concurs)


_____
LILLARD, J. (Concurs)