# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON
_____

|  |  |  |
|---|---|---|
| **JOHNNY GLENN HILLIARD,** | ) | Weakley County Chancery Court |
|  | ) | No. 13598 |
| Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C. A. NO. 02A01-9609-CH-00230 |
|  | ) |  |
| **MISTY LYNN HILLIARD** | ) |  |
| **And TERRY MINTON**, | ) |  |
|  | ) |  |
| Defendants/Appellees. | ) |  |
|  | ) |  |

_____

From the Chancery Court of Weakley County at Dresden.
**Honorable William Michael Maloan, Chancellor**

**FILED**

**Feb. 12, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

**James H. Bradberry**,
BRADBERRY, CROWE & MacLEOD, Dresden, Tennessee
Attorney for Plaintiff/Appellant.

**Langdon S. Unger, Jr.**, Martin, Tennessee
Attorney for Defendants/Appellees.

OPINION FILED:

**REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.** : (Concurs)
**LILLARD, J.** : (Concurs)

Johnny Glenn Hilliard (Father) appeals from the order of the trial court granting visitation rights to his son's maternal grandmother. Father and Misty Lynn Hilliard (now Schrems) (Mother) married in 1992. Alexander Glenn Hilliard (Alex) was born in May 1993. The parents divorced in January, 1995 and temporary custody[1] was awarded to Terry Minton, the maternal grandmother. At that time, Mother was living with her mother, Terry Minton. Mother currently resides in Florida with her present husband.

Father subsequently filed a petition for a modification of the decree asking that he be awarded custody of Alex. By order of May 6, 1996, Father was awarded custody of Alex and the maternal grandmother, Terry Minton, was granted visitation with the child every other weekend from Friday at 5:00 p.m. until Sunday at 5:00 p.m. It is from this portion of that order that Father appeals.

Father states the issue on appeal as "[w]hether the maternal grandmother is entitled to visitation with a three-year-old grandson where the grandson is in the custody of the father and the mother has relocated to another state." Father relies upon the authority of *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993); *Simmons v. Simmons*, 900 S.W.2d 682 (Tenn. 1995) and *Floyd v. McNeely*, No. 02A01-9408-CH-00187 (Tenn. App. July 5, 1995). *Hawk* concluded that "Tennessee's historically strong protection of parental rights and the reasoning of federal constitutional cases convince us that parental rights constitute a fundamental liberty interest under Article I, Section 8 of the Tennessee Constitution." *Hawk* held T.C.A. § 36-6-301[2] to be an unconstitutional invasion of parents' privacy rights as afforded under the Tennessee Constitution when applied to the facts presented. That case involved a petition for grandparental visitation filed by the paternal grandparents against married parents who had maintained continuous custody of their children and whose fitness as parents went unchallenged. *Hawk*, 855 S.W.2d at 577, 582. *Hawk* determined that the parents possessed a constitutional right of privacy in parenting decisions not subject to interference from the state absent a showing of "substantial harm" to a child's welfare.

---

[1]Custody orders are neither temporary nor permanent in that they remain under the control of the court and can be changed upon a proper showing of material change of circumstances. *Dept. of Human Services v. Gouvitsa*, 735 S.W.2d 452 (Tenn. App. 1987).

[2]**Grandparents' visitation rights**. -- (a) The natural or legal grandparents of an unmarried minor child may be granted reasonable visitation rights to the child during such child's minority by a court of competent jurisdiction upon a finding that such visitation rights would be in the best interests of the minor child. . . . The current statute is T.C.A. § 36-6-302(a).

*Id*. at 577. ***Hawk*** reasoned that there was no compelling state interest justifying interference with such right of parents absent this showing. *Id*. at 582. ***Hawk*** stated that without a showing of substantial harm to the child, "a court may not constitutionally impose its own subjective notions of the 'best interests of the child' when an intact, nuclear family with fit, married parents is involved." *Id*. at 579. To this end, ***Hawk*** declined to proceed with a "best interests of the child" analysis until and after the required showing of harm which the court viewed as the "sole protection that parents have against pervasive state interference in the parenting process." *Id*. at 580-81. Moreover, ***Hawk***, refused to assume that the grandparent-grandchild relationship always proves beneficial to the child as such assumption, "overlooks the necessity of a threshold finding of harm ***before*** the state can intervene in the parent-child relationship." *Id*. at 581.

***Simmons v. Simmons*** involved a mother and adoptive father of a minor child who sought to terminate the court ordered visitation privileges of the child's paternal grandparents. The court recognized that ***Hawk*** was distinguishable in certain respects, but reasoned that "the relationship between an adoptive parent and child is no less sacred than the relationship between a natural parent and child" and is therefore deserving of the "same legal protection." ***Simmons***, 900 S.W.2d at 685. ***Simmons*** concluded that the record before it contained no evidence that a substantial danger of harm threatened the child and thus found no compelling state interest justifying court intrusion upon the natural mother's and adoptive father's rights as parents to preclude a relationship between their child and the paternal grandparents. *Id*. at 685.

In ***Floyd v. McNeely*** the father died shortly after he and the mother were divorced. A petition was brought by the paternal grandmother seeking visitation with her grandchildren. She testified that she had had a close relationship with the children from their birth until the death of their father. This Court said:

> In view of the reasonings extended by our supreme court in ***Simmons*** and ***Hawk***, we are convinced that McNeely's right to parent her children as she sees fit, including a decision regarding a relationship between them and their grandmother, is no less greater than the right afforded to the married natural parents under ***Hawk***. We conclude that the rights afforded to the parents in ***Hawk*** extend equally to McNeely despite the death of her children's father and her subsequent remarriage. To this end, we do not view the breakup of the nuclear family, in and of itself, to constitute a substantial harm to a child

> sufficient to justify state interference with a fit parent's decision to preclude a relationship between that child and his/her grandparents.

*Floyd*, slip op. at 5. Citing *Hawk* and *Simmons*, this court reasoned that there was no justification for state interference because there was no evidence of a substantial danger of harm to the children. *Id*. at 5.

This issue was more recently addressed by this Court in *McVay v. Blen*, No. 02A01-9508-JV-00183 (Tenn. App. December 19, 1996), wherein the paternal grandparents filed a petition for visitation which was granted in the court below. In that case the parents were never married and, in reversing the trial court, this Court stated that "mother's unmarried status does not diminish her fundamental privacy interest in raising Lauren. Therefore, under *Hawk*, the trial court could not order visitation with Grandparents in the absence of a threshold finding that Mother was unfit or that the circumstances presented a substantial danger of harm." *McVay*, slip op. at 4.

Appellee relies upon an unreported case from the Middle Section of this Court, *Vanderpool v. Boone*, No. 01-A-01-9508-CH-00358 (Tenn. App. March 27, 1996), wherein the grandmother had been awarded visitation in the divorce decree. The paternal grandmother filed a petition against the mother for enforcement of her visitation rights and for contempt. The trial court found there had been no material change of circumstances to justify a change in the visitation provisions and the appellate court affirmed. The court noted in its opinion that the supreme court has set constitutional limits on the authority of trial courts to order grandparent visitation, even where the court may believe that such visitation is in the best interest of the child. The court noted however, that the court has not declared T.C.A. § 36-6-302 to be unconstitutional, therefore trial courts may still issue and enforce grandparent visitation orders under appropriate circumstances. *Vanderpool*, slip op. at 6. The court went on to say that:

> The present case does not involve the one situation discussed by the Supreme Court (significant danger of harm to the child) where the courts are specifically authorized to ignore the preferences of the parents and issue a visitation order deemed to be in the best interests of the child. However, the order Mrs. Vanderpool now objects to differs from those reversed by the Supreme Court in the above-cited cases, in that she herself suggested that visitation be granted to Mrs. Seat, while the visitation orders granted by the trial courts in the

> *Hawk* and *Simmons* cases were issued over the objections of the parents.

*Id*. at 6-7. Unlike the custodial parent in *Vanderpool*, nothing in the record in the present case reveals that the father suggested that visitation be granted to Mrs. Minton in the divorce decree. His appeal from the trial court's award of visitation belies that. The *Vanderpool* court further noted that visitation orders remain within the control of the court and are subject to modification upon appropriate showing of change of circumstances.

However, in the present case the trial court was apparently satisfied that Father had shown sufficient change of circumstances to support a change of custody from the maternal grandmother to Father. That ruling is not appealed. Unlike *Vanderpool*, the present case does not involve a modification of grandmother's visitation, but rather a modification of custody. Although the grandmother had custody, her visitation was first ordered in the order which is the subject of this appeal, the change of custody from her to the father. This case does differ from the cases previously cited in that *Hawk, Simmons, Floyd* and *McVay* were all petitions brought by grandparents seeking visitation pursuant to T.C.A. § 36-6-301. Nevertheless, we believe that the underlying holding in those cases, that parents possess a constitutional right of privacy in parenting decisions not subject to interference from the state absent a showing of substantial harm to the child, is applicable to this case. The best interest of the child is not determined until and after the required showing of harm. As we interpret the prior holdings, once Father is granted custody, he has the right to decide whether the grandparents may have visitation. Courts will not interfere absent a threshold finding of a danger of substantial harm to the child.

As heretofore noted, Alex was born March 25, 1993. During the pendency of the parents' divorce, temporary custody was awarded to the mother "in the home of the maternal grandmother," Mrs. Terry Minton, with reasonable visitation to the father. The final decree of divorce awarded temporary custody of Alex to Mrs. Minton, who was thirty-seven years old, with visitation rights to the father. No visitation to the mother was provided for in this order.

The statement of the evidence on the hearing on Father's petition to modify the decree

to award him sole custody of Alex indicates that Father and Mrs. Minton had some disagreements over his visitation with Alex as well as payment of child support. The undisputed testimony from Mrs. Minton was that Alex had lived in her home since infancy, that she had cared for him and that little was done for Alex by his mother. The mother, who has remarried and moved to Florida, was not awarded any visitation with Alex.[3]

The record before us does not indicate whether the trial court made any determination as to whether a denial of visitation to Mrs. Minton with Alex would result in a substantial danger of harm to him. The record does indicate that Mrs. Minton has, in effect, been Alex's mother since infancy.

We believe that this is an appropriate case to be remanded to the trial court pursuant to T.C.A. § 27-3-128 for the trial court to make a threshold determination of whether cessation of the relationship between Alex and Mrs. Minton presents a substantial danger of harm to Alex and, if such harm is found, to determine whether visitation with Mrs. Minton is in Alex's best interest.

Therefore, this case is remanded to the trial court for further proceedings consistent with this opinion. The costs of this appeal are taxed one-half to Johnny Glenn Hilliard and one-half to Terry Minton, for which execution may issue if necessary.

———————————————————
FARMER, J.

———————————————————
CRAWFORD, P.J., W.S. (Concurs)

———————————————————
LILLARD, J. (Concurs)

_____

[3]The mother did not appeal the trial court's decision not to award her visitation rights.