IN THE COURT OF APPEALS OF TENNESSEE

AT NASHVILLE

FILED

August 2, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| SHANNON REA ROBERTS, | ) | C/A NO. 01A01-9812-JV-00631 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | APPEAL AS OF RIGHT FROM THE |
| CREIG McLAUGHLIN, | ) | DAVIDSON COUNTY JUVENILE COURT |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| | ) | |
| | ) | |
| JANICE ROBERTS, | ) | |
| | ) | |
| Intervening Petitioner- | ) | HONORABLE BETTY ADAMS GREEN, |
| Appellant. | ) | JUDGE |


For Appellant                          For Appellee

JOE F. GILLESPIE, JR.                  JAMES ROBIN McKINNEY, JR.
Joelton, Tennessee                     Nashville, Tennessee


O P I N I O N


AFFIRMED AND REMANDED                              Susano, J.

This case originated as a paternity action. Shannon Rea Roberts ("Ms. Roberts") sought to establish that Creig McLaughlin ("McLaughlin") was the father of her child, Dylan Daniels Roberts ("Dylan") (DOB: February 14, 1997). The part of the case now before us concerns the petition to intervene filed in that proceeding by Janice Roberts ("Grandmother"), who is the mother of Shannon Rea Roberts and the grandmother of Dylan. In her petition, Grandmother seeks court-ordered "reasonable visitation rights" with Dylan. McLaughlin moved to dismiss Grandmother's petition, relying on Rule 12.02(6), Tenn.R.Civ.P., and asserting that the petition "fail[s] to state a claim upon which relief can be granted."[1] *Id*. The trial court granted McLaughlin's motion, finding[2] that T.C.A. § 36-6-306 (Supp. 1998) does not authorize an award of grandparents' visitation under the undisputed material facts of this case. Grandmother appeals, arguing that the trial court erred in dismissing her petition. We affirm.

In the paternity action, McLaughlin filed an answer in which he admitted that he was Dylan's father. Subsequently, the trial court entered an order decreeing the child's paternity. At a later time, Ms. Roberts and McLaughlin were awarded Dylan's joint custody. The trial court also decreed that Dylan would

---

[1]At the hearing below, a transcript of which is in the record, McLaughlin also argued that the trial court did not have statutory jurisdiction to entertain a petition for grandparents' visitation. The trial court did not address this argument, and it is not advanced as an issue before us. Since this issue is not asserted on this appeal and has not been briefed by the parties, we have ignored it. *See* Rule 13(b), T.R.A.P.

[2]While the trial court's order does not state a reason for dismissing Grandmother's petition, it is clear from the transcript of the hearing on the motion to dismiss that the court's decision was based upon McLaughlin's main argument, *i.e.*, that the language of the statute does not apply to grandparents' visitation with a child born out of wedlock.

live with his mother and that McLaughlin would have certain specified visitation rights. He was ordered to pay child support.

While there are disputed facts in the record, we find that those facts are not material to our resolution of this appeal. The material facts are not in dispute: (1) Dylan is the natural child of Ms. Roberts and McLaughlin; (2) Grandmother is the maternal grandmother of Dylan; and (3) Ms. Roberts and McLaughlin are not now, and never have been, married. While the unwed relationship of Dylan's parents does not appear on the face of Grandmother's petition, that fact is clear and undisputed from material in the record "outside the pleading." Rule 12.02, Tenn.R.Civ.P. Hence we will treat the trial court's order as one for summary judgment, which we will review *de novo* with no presumption of correctness. *See* Rules 12.02, Tenn.R.Civ.P., and 13(d), T.R.A.P. *See also* **Hembree v. State**, 925 S.W.2d 513, 515 (Tenn. 1996).

The statute upon which Grandmother must and does rely is T.C.A. § 36-6-306 (Supp. 1998). That statute is a codification of part of Chapter 503 of the Public Acts of 1997, which Public Chapter became effective July 23, 1997.[3] As pertinent here, T.C.A. § 36-6-306 (Supp. 1998) provides as follows:

    (a) If:

---

[3]*See* Compiler's notes to T.C.A. § 36-6-306 (Supp. 1998).

(1) Either the father or mother of an unmarried minor child is deceased;

(2) The child's father and mother are divorced or legally separated;

(3) The child's father or mother has been missing for not less than six (6) months; or

(4) The court of another state has ordered grandparent visitation;

then, the parents of such deceased person or the parents of either of such divorced or separated persons or the parents of the missing person may be granted reasonable visitation rights to the child during its minority by a court of competent jurisdiction upon a finding that such visitation rights are in the best interests of the minor child, based on the factors in § 36-6-307(d)(2).

\* \* \*

We must decide if this statute authorizes court-ordered grandparents' visitation under the circumstances of this case.

In interpreting a statute, we must "ascertain and give effect to the intention and purpose of the legislature." *Tuggle v. Allright Parking Systems, Inc*., 922 S.W.2d 105, 107 (Tenn. 1996). We fulfill this obligation by giving effect to the "natural and ordinary meaning of the language used [by the legislature], without a forced or subtle construction that would limit or extend the meaning of the language." *Id*. If the language is clear, our duty is likewise clear: we are to "obey it." *Id*. (quoting from *Miller v. Childress*, 21 Tenn. (2 Hum.) 320, 321-22 (1841)).

The statute under discussion, by omission, clearly limits those situations in which a grandparent can attempt to

4

establish his or her entitlement to court-ordered visitation with a grandchild. For example, the statute makes no specific mention of a grandparent's right to visitation with respect to the child of an intact two-parent family. This omission may well be in response to the basic holding of the Supreme Court in the case of *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993). In that case, the High Court rebuffed grandparents' efforts to compel living-together, married, fit parents to permit the grandparents to visit with their grandchildren. *Id*. at 577. In any event, the statute clearly does not apply to a grandparent's petition to compel visitation with the offspring of living-together, married parents. From this it can be seen that the legislature did not intend to include *all* grandparents within the ambit of the statute's reach.

As we read T.C.A. § 36-6-306, it does not apply broadly to *all* grandparents of children born out of wedlock. As can be seen, the statute does not address such children as a group. As pertinent here, the statute is clearly limited to the following situations: where one of the parents is deceased; where the parents are divorced or legally separated;[4] where one of the parents "has been missing for not less than six (6) months;" and where another state has ordered grandparent visitation.[5] T.C.A. § 36-6-306(a)(Supp. 1998). None of these factual scenarios are present in the instant case. In other words, Grandmother in this

---

[4]*See, e.g.*, T.C.A. § 36-4-102 (Supp. 1998).

[5]T.C.A. § 36-6-306(b)(1) (Supp. 1998) addresses the issue of grandparents' visitation when a relative or stepparent has adopted the child with whom the petitioner seeks to visit. *See also* T.C.A. § 36-6-307 (Supp. 1998).

5

case cannot bring her factual pattern within T.C.A. § 36-6-306(a)(1), (a)(2), (a)(3), or (a)(4).[6]

Grandmother urges us to find that the "legally separated" concept embodied in T.C.A. § 36-6-306(a)(2) (Supp. 1998) applies to never-married parents who are not living together. We find this to be a strained construction of the language employed by the legislature and, hence, one that we cannot adopt. *Tuggle*, 922 S.W.2d at 107. "Legally separated" is a concept that has long been applied in the law to married individuals who are living apart from one another. On the other hand, the use of the word "legally" is particularly foreign to the language normally employed when discussing never-married-to-each-other parties who do not live together. In fact, it seems to us that the terminology "*legally*-separated, never-married parties" is an oxymoron. We do not believe that the legislature would utilize such nonsensical language to express what is essentially a very simple and easily-expressed concept -- the parents of children born out of wedlock who are not living together. Had the legislature intended to cover such children, it could have done so with ease and in unmistakable language. We also believe that it is significant that the legislature, in T.C.A. § 36-6-306(a)(2), chose to couple the "divorced" concept with the "legally separated" concept. This is still further evidence that the legislature intended to limit the ambit of T.C.A. § 36-6-306(a)(2) (Supp. 1998) to the children of parents who had been or were *married*.

---

[6]Our resolution of the issue before us on appeal does not require us to determine whether subsection (a)(1), (a)(3), and (a)(4) can, in an appropriate case, apply to children born out of wedlock.

Having decided that the legislature did not intend for the relevant statutory scheme to extend to Grandmother's situation in this case, our duty is clear -- we must obey the statute. It is not for us to say whether the omission of Grandmother's factual pattern is or is not a wise one. The establishment of public policy is not our prerogative;[7] it is primarily for the General Assembly. *See Smith v. Gore*, 728 S.W.2d 738, 746 (Tenn. 1987).

The right of a grandparent to compel visitation with his or her grandchildren is purely statutory; no such right existed at common law.[8] Therefore, in the absence of a statute whose language encompasses the facts of this case, Grandmother cannot pursue her petition.

Since we have determined that the statute does not apply to the factual scenario in this case, we pretermit any discussion regarding whether or under what circumstances the statutory scheme for grandparents' visitation can be constitutionally applied. *Cf. Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993); *Simmons v. Simmons*, 900 S.W.2d 682 (Tenn. 1995); *Floyd v. McNeely*, C/A No. 02A01-9408-CH-00187, 1995 WL 390954 (Tenn.App., W.S., filed July 5, 1995); and *Ellison v. Ellison*, C/A No. 02A01-9803-CH-00054, 1998 WL 959670 (Tenn.App., W.S., filed November 4, 1998).

---

[7]The parties do not raise any constitutional issues on this appeal.

[8]*See Hawk v. Hawk*, 855 S.W.2d 573, 576 n.1 (Tenn. 1993).

The appellee's request for attorney's fees for frivolous appeal under T.C.A. § 27-1-122 is found to be without merit and is hereby denied. The issue raised by the appellant was fairly debatable. *See* **Cole v. Dych**, 535 S.W.2d 315, 323 (Tenn. 1976).

The judgment of the trial court is in all things affirmed. Costs on appeal are taxed to the appellant. This case is remanded to the trial court for such further proceedings, if any, as may be required, consistent with this opinion, and for collection of costs assessed below, all pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
Herschel P. Franks, J.

8