IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 14, 2002

## DAVID RALPH LILES, ET AL. v. REBECCA SUE MITCHELL, ET AL.

Appeal from the Circuit Court for Wilson County
No. 11285    Clara Byrd, Judge

No. M2001-02037-COA-R3-CV - Filed December 19, 2002

Mark Steven Blair appeals the action of the trial judge in granting custody of his minor child, born out of wedlock, to the maternal grandparents. Finding that a substantial risk of harm might occur to the minor child if custody was placed with Mr. Blair and that the biological mother of the child was incarcerated, the trial court vested custody of the child in the maternal grandparents with substantial visitation rights given to Mr. Blair, the biological father. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right ; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Anthony E. Hagan, Lebanon, Tennessee, for the appellant, Mark Steven Blair.

Susan M. Merry, Lebanon, Tennessee, for the appellees, David Ralph Liles and Barbara Ann Liles.

### OPINION

Mark Blair lives in Oak Grove, Missouri with his wife Kathy Blair. They are parents of four children. David and Barbara Liles are residents of Lebanon, Tennessee, and parents of Rebecca Liles Mitchell, Mark Blair's former mistress. Mark Blair and Kathy Blair were divorced in 1992 when Kathy discovered that Mark was having an affair with Rebecca. From this relationship of Mark and Rebecca was born Tiffany Blair on April 7, 1995. Thereafter, in 1997, Mark Blair and Kathy Blair remarried. On January 6, 1996, Rebecca and Tiffany moved into the home of Barbara and David Liles, then residing in Missouri. In that same year, Barbara and David Liles, along with Rebecca Mitchell and Tiffany Blair, moved to Lebanon, Tennessee, and in 1999, Rebecca moved out of the home leaving Tiffany with Mr. and Mrs. Liles.

Rebecca Mitchell suffers from drug addiction, and at the time of these proceedings, she was incarcerated on felony convictions and does not assert any claim as to custody of Tiffany. In a rather

unusual development Rebecca, after having been the primary cause of the break up of the first marriage of Mark and Kathy Blair, became a frequent guest in their home after they remarried. Kathy Blair asserted that this arrangement provided the only means by which she and Mark Blair could establish a meaningful relationship with Tiffany.

Thus is the foundation laid for this litigation whereby the maternal grandparents of Tiffany, who have been, since her birth, her primary care givers, seek custody in preference to her biological father. This is not a case seeking termination of the parental rights of the biological father, whereby permanent disruption of the relationship between Tiffany and her biological father is sought. It deals solely with custody, which will remain the subject of future court intervention until the time that Tiffany is emancipated.

A single issue governs the outcome of this appeal, and that issue is isolated with rifle-shot accuracy by the supreme court in *Petrosky v. Keene*, 898 S.W.2d 726 (Tenn. 1995) and *Simmons v. Simmons*, 900 S.W.2d 682 (Tenn. 1995). The sole issue on appeal is whether or not the record establishes that vesting custody of Tiffany in her biological father would likely result in substantial harm to the child. There is no "best interest" of the child analysis in this contest between maternal grandparents and biological father.

> In *Nale v. Robertson*, 871 S.W.2d 764 (Tenn. 1994), this Court held that the father of a child born out of wedlock has a fundamental interest in the care and custody of the child under both the federal and state constitutions; however, the father must take affirmative steps to develop a responsible relationship with the child before his interest is sufficient to acquire constitutional due process protection; and, if the father has admitted his paternity and has established a substantial relationship with the child, the state may not interfere with that relationship except to protect the child from substantial harm. *See also Davis v. Davis*, 842 S.W.2d 588, 598-600 (Tenn. 1992); *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993).
> This Court held in *In re: Adoption of Female Child, Bond v. McKenzie*, 896 S.W.2d 546, 547-48 (Tenn. 1995), that "in a contest between a parent and a non-parent, a parent cannot be deprived of the custody of a child unless there has been a finding, after notice required by due process, of substantial harm to the child. Only then may a court engage in a general 'best interest of the child' evaluation in making a determination of custody."
> The proof in this case supports the trial court's finding that the father is not unfit to have custody, and that he has developed a substantial relationship with the child. It shows that the child is in no danger of substantial harm. The father, therefore, has a fundamental interest in parenting the child which precludes a "best interest" determination of custody.

*Keene*, 898 S.W.2d at 728.

The trial court, after an extensive hearing, held:

1. That the Mother, Rebecca Sue Mitchell, is currently incarcerated and unable to be considered as a custodial parent.

2. That a substantial risk of harm exists at Father's home, and that a substantial risk of harm may occur if custody was awarded to Father, in that the Court finds Father has drug and alcohol problems. Further, the Court finds that Father has not complied with the Court's order in obtaining a certificate or proper proof that Father's septic system is in compliance with health and safety regulations.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED as follows:

1. That Mark Steven Blair is the biological and legal father of Tiffany Ann Blair.

2. That obstacles exist to any pleading by Father for change of custody, in that there is a likelihood of substantial risk of harm to the minor child due to:

> a. Father's Alcohol/Drug Dependency. The Court finds that Father's alcohol and drug problem is a serious problem. Although Father does not believe he has a problem with drugs and alcohol, Father failed the Court's random drug screen. Father shall take steps to resolve his alcohol and drug problem. Dr. Tench is concerned with Father's abuse of alcohol and has recommended that Father abstain from using alcohol, and further recommended that Father attend AA meetings. Additionally, Ms. Blair will ensure that no drugs or alcohol are present in the Blair home at any time. Furthermore, Father's two older sons shall not be allowed to be in Father's home while the minor child, Tiffany Ann Blair, is in Father's home.
>
> b. Septic Problem. Raw sewerage is currently draining onto Father's current place of residence, creating hazardous conditions to the extent that the property should be condemned. Father shall cooperate with authorities to get an inspection and permit for his current residence. Father shall provide to this Honorable Court and to counsel for Petitioners a certificate and/or a permit and lawful inspection evidencing that the sewerage problem on his property has been repaired.

3. That the Court finds the Mother, Rebecca Sue Mitchell, is currently incarcerated and unable to be considered as a custodial parent.

4. That petitioners, David Ralph Liles and wife, Barbara Ann Liles, shall have full, permanent care, custody and control of the minor child, Tiffany Ann Blair, whose date of birth is April 7, 1995.

This final judgment also provided for child support to be paid by Mark Blair and for extensive visitation between Tiffany and her father.

The findings of fact of the trial court are reviewed *de novo* on appeal with a presumption that the trial court has correctly determined the facts, and such findings will only be disturbed on appeal

if this Court determines that the evidence preponderates against them. Tenn. R. App. P. 13(d); *Nichols v. Nichols*, 792 S.W.2d 713 (Tenn. 1990).

When a case turns upon the credibility of witnesses, the trial judge has had the benefit of observing the manner and demeanor of the witness while testifying; thus, this Court is limited to review of a printed transcript of such testimony, and the determination of the trial court as to credibility is entitled to great weight. This Court is reluctant to second guess the trial court in matters of credibility. *Massengale v. Massengale*, 915 S.W.2d 818 (Tenn. Ct. App. 1995); *Town of Alamo v. Forcum-James Co.*, 327 S.W.2d 47 (Tenn. 1959); *Gaskill v. Gaskill*, 936 S.W.2d 626 (Tenn. Ct. App. 1996).

Does the evidence preponderate against the findings of fact of the trial court that Mark Blair suffers from a serious alcohol and drug problem and that his two adult sons, by their lawless behavior, represent a threat to Tiffany? Further, does the raw sewerage at the father's residence constitute a hazard to the health and welfare of Tiffany? Upon careful review of the testimony, it is clear that the evidence does not preponderate against these findings of fact, upon which findings the trial court determined that a substantial risk of harm to Tiffany existed in the father's home and that a substantial risk of harm may occur to Tiffany if custody is granted to Mark Blair.

The record is replete with repeated episodes when Mark Blair was either intoxicated or under the influence of drugs. He has been convicted three times of DUI, the latest being September 3, 1998, following a previous conviction on July 21, 1998. He denies that he has a problem with alcohol - - he just likes to drink. In his testimony, he asserted that he had not used illegal drugs for five years, but when subjected to a drug screen during the course of the trial, he tested positive for drugs.

The trials and tribulations of Mark and Kathy Blair regarding their two, now adult, children, Mark, Jr. and Jeremy, are revealing. According to Mark, Sr., eldest son, Mark, Jr., has a drinking problem. The police were constantly called to the home of the parties in regard to drugs, drink and boisterous conduct by the two boys and their father. Kathy had little problem with Rebecca living in her household but drew the line when she caught Rebecca having sex with Mark, Jr. while Tiffany was present in the house.

> THE COURT: Why did you separate from him?
> THE WITNESS: Why did we separate? I caught him at the bar with Becky. That was enough for me.
> THE COURT: And was he doing drugs or drinking back when y'all were still living together, before you left him?
> THE WITNESS: Well, I didn't leave him. I put him out. I kept the house and the kids.
> THE COURT: Okay. But before you kicked him out.

THE WITNESS: There was not a lot of drinking, but he was drinking. Then he got running around on me, and I caught him down there at the bar one evening, and I had had enough.

BY MS. MERRY:

Q. What about drugs? You were aware that he was using drugs?

A. He done marijuana years ago.

Q. And he's admitted to using cocaine?

A. He has?

Q. I'm asking you, has he admitted to you to using cocaine or methamphetamines?

A. Yes. He has told me he's done it before, years ago, but he's never done it around me or the kids because I am anti-alcohol and anti-drugs.

Q. He just got a DUI in '98. That's his third one in ten years.

A. Yeah, and that was the one he got when Becky just flew into town, and he was going to stay - - and he was a little stressed, and she was going to stay at our house with the baby, and he decided he would go out with a friend of his, one of the guys he worked with, and they started drinking, and Mr. Blair decided he would be the driver because there was like three of them, and nobody had a driver's license, and he decided he would be the driver, and they was going back to the shop, which was like half a mile up from the 7-Eleven, and he got a DWI. He had to come home and face me and Becky both.

Q. Why would you want Becky to come stay in your home? That's who he had the affair with. That's why you got divorced the first time.

A. Yes, and she's also slept with my son.

The tolerance and broad-mindedness of Kathy Blair is amazing. Her failure to recognize and comprehend the problems in her household are indicative of one who simply refuses to see that which is obvious.

The finding of the trial court as to the raw sewerage at the home of Mark and Kathy Blair is fully supported by the record and need not be detailed. This appears to be a problem which could be resolved by expenditure of money or a change of home location. It is, nonetheless, in its present state, a harmful condition as it relates to Tiffany.

Mark Blair is the biological father of Tiffany and will remain so unless and until his rights are terminated by law. The due process considerations set forth in *Keene* and *Simmons* remain applicable. Whether he can remedy the conditions, which have resulted in this finding of substantial harm to Tiffany, such that the result would be vesting custody in him, remains to be seen.

On the record before this Court, the evidence certainly does not preponderate against the findings of the trial court, and the judgment of the Circuit Court of Wilson County is in all respects affirmed.

The case is remanded to the trial court for such further proceedings as may be necessary.

Costs are assessed against Appellant.

_____
WILLIAM B. CAIN, JUDGE