IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Brief January 12, 2004

**IN THE MATTER OF: B.E.D.**

**Direct Appeal from the Juvenile Court for Shelby County**
**No. M5659     Kenneth A. Turner, Judge**

---

**No. W2003-02026-COA-R3-JV - Filed March 22, 2004**

---

The biological, custodial parent of a minor child appeals the juvenile court's award of visitation rights to the child's adult half-sister. We find no authority granting an adult sibling visitation rights to a minor child. We accordingly vacate the juvenile court's order.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Andrew Bernstein, Memphis, Tennessee, for the appellant, Bryan Davis.

David F. Kustoff, Memphis, Tennessee, for the appellee, LaQuasha Harris-Lee.

**OPINION**

This dispute is over visitation rights awarded to an adult half-sister of a minor child, B.E.D. On July 11, 2001, the Juvenile Court Referee filed Findings and Recommendations of Referee in the Juvenile Court for Memphis and Shelby County, Tennessee. The 2001 Findings state that L.D.J., born August 8, 1984, and B.E.D., born October 26, 1996, were dependent and neglected children, that said children were without proper guardianship, and that their mother, Marva Walker, was deceased. It further states that said children were currently living with LaQuasha Harris-Lee (Ms. Harris-Lee), their sister. The referee recommended that custody of B.E.D. be awarded to her father, Bryan Anthony Davis (Mr. Davis), and that custody and guardianship of the person of L.D.J., be awarded to his sister, Ms. Harris-Lee. The referee further recommended that Ms. Harris-Lee be awarded visitation privileges with B.E.D. four (4) nights each week, "to be worked out between the parties." The juvenile court confirmed the Findings and Recommendations of the referee as the decree of the court. There was no appeal from this decree.

On June 4, 2003, Ms. Harris-Lee filed a petition to modify the order, praying that she be awarded specific visitation with B.E.D. The record before us reveals that B.E.D. and Ms. Harris-Lee are sisters, being the children of their deceased mother. There is no indication of any kinship between Mr. Davis and Ms. Harris-Lee. Nine days after the filing of Ms. Harris-Lee's petition, Mr. Davis filed a petition to modify visitation asserting that, as the child's surviving natural parent, it was his right to determine visitation of third parties with his daughter. Mr. Davis asked the court to modify the previous order and disallow visitation by Ms. Harris-Lee.

The juvenile court heard the matter on July 30, 2003. On that same date, the court confirmed the Findings and Recommendations of Referee as the court's decree. The court modified the July 11, 2001, decree, awarding Ms. Harris-Lee visitation with her sister "every other weekend from after school on Friday until 6:00 P.M. Sunday, beginning August 8, 2003." The 2003 decree further provided that Ms. Harris-Lee "shall have first right of refusal for babysitting said child in the event that the father needs a caregiver." It is from this decree that Mr. Davis now appeals.

### Issue Presented

On appeal to this Court, Mr. Davis raises the issues of whether a showing of substantial harm to the child is required to award visitation rights to Ms. Harris-Lee, and whether the court below properly undertook a best interest of the child analysis absent a showing of substantial harm. However, we believe the threshold, determinative issue presented in this case is whether a court may award visitation rights to an adult sibling when the minor child is in the custody of his parent.

### Standard of Review

The issue before this Court is an issue of law. We review a trial court's conclusions on matters of law *de novo*, with no presumption of correctness. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

### Analysis

This Court recently addressed the right of a non-parent to visitation of a minor child in *In re: Thompson*, 11 S.W.3d 913 (Tenn. Ct. App. 1999). That case was a consolidation of two cases wherein the mothers' former partners in same-sex relationships sought visitation with the mothers' minor children. In holding that the former partners were not entitled to visitation rights, this Court noted that in Tennessee, absent a statutory right or adjudication to the contrary, parents have custody and control over their minor children. *Id*. at 919; Tenn. Code Ann. § 34-1-102(c)(2001). We stated in *Thompson*:

> As one court from another jurisdiction correctly observed, "To allow the courts to award visitation – a limited form of custody – to a third person would necessarily impair the parents' right to custody and control." *Alison D. v. Virginia M.*, 77 N.Y.2d 651, 569 N.Y.S.2d 586, 572 N.E.2d 27, 29 (1991). Accordingly, we

conclude that, based upon the statutory right of parents to custody and control of their minor children, Tennessee law does not provide for any award of custody or visitation to a nonparent *except as may be otherwise provided by our legislature*. In the cases before this Court, neither White's nor Looper's claim to visitation was asserted pursuant to any such statutory right or proceeding. Accordingly, as these cases are presented to this Court, the trial court in each case was correct in dismissing the nonparent's claim based upon lack of standing to assert such claims.

*Id.* Our legislature has specifically addressed visitation rights of a non-custodial grandparents and stepparents in Tenn. Code Ann. § 36-6-306 and § 36-6-302, respectively. We find no statutory authority granting visitation rights to an adult sibling.

The parties now before this Court frame the issue on appeal in terms of substantial harm and best interests of the child. Indeed, with respect to visitation rights of grandparents under Tenn. Code Ann. § 36-6-306, there must be a showing that substantial harm to the child will result in the absence of grandparent visitation before the court may consider awarding grandparents such rights. Tenn. Code Ann. § 36-6-306(c); *Hawk v. Hawk*, 855 S.W.2d 573, 582 (Tenn. 1993). In *Hawk v. Hawk*, our supreme court concluded that the application of the grandparent's visitation act, as it existed at that time, to the facts in that case violated the constitutional right to privacy in parenting decisions under Article I, Section 8 of the Tennessee Constitution. The court accordingly reversed the decision to award visitation to the children's grandparents. The *Hawk* court noted that parents have a constitutionally protected privacy interest in their child rearing decisions "so long as their decisions do not substantially endanger the welfare of their children. Absent some harm to the child, we find that the state lacks a sufficiently compelling justification for interfering with this fundamental right." *Id.*; *see also*, *Simmons v. Simmons*, 900 S.W.2d 682 (Tenn. 1995)(holding: grandparents could not be awarded visitation rights absent a showing of substantial harm to the child).

The substantial harm analysis required for an award of visitation rights to grandparents was developed in light of parents' fundamental constitutional rights to the care and custody of their children. Parents' rights are not absolute, however, and the legislature has directed that such rights may be abrogated or infringed upon in certain circumstances as defined by statute if there is a compelling state interest. *See, e.g., Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994). Examples of such narrow exceptions are found in Tenn. Code Ann. § 36-1-113 (termination of parental rights) and § 36-6-306 (grandparent visitation). Thus, despite Ms. Harris-Lee's assertion that the trial court in this case determined B.E.D. would suffer substantial harm were Ms. Harris-Lee not awarded visitation privileges, and that such an award is in B.E.D's best interest, there simply is no legislative directive under which the court would have authority to award visitation rights to an adult sibling where the minor child is in the care and custody of its parent. *See In re Thompson*, 11 S.W.3d at 919 (holding: absent statutory directive, same-sex partner of child's biological mother had no standing to claim visitation privileges with minor child).

In this case, Mr. Davis would be on solid ground if his appeal was from the initial award of visitation rights to Ms. Harris-Lee in 2001. This appeal, however, concerns not an initial award of

rights, but arises from a petition to modify visitation. This appeal is, therefore, analogous to the situation is *Simmons*, where the appeal arose not from an initial award of visitation, but from an action brought to modify the award.

*Simmons v. Simmons*, involved a dispute between the natural mother and adoptive father and the paternal grandparents concerning visitation. In *Simmons*, the Tennessee Supreme Court noted that the Court of Appeals had refused to terminate court authorized visitation privileges of the paternal grandparents upon the application of the mother and adoptive father. *Simmons*, 900 S.W.2d at 682. As the *Simmons* court noted, the Court of Appeals based its decision upon a finding that there had been no change in circumstances justifying termination. *Id.* The supreme court reversed, holding:

> Since the record shows that the threshold issue - danger of substantial harm - has not been established, the appellant and the adoptive father are entitled to constitutional protection of their parental rights.

*Id*. at 685. The Simmons court continued:

> Since change of circumstances is not the standard for determining the parents' right to refuse visitation to a non-parent, no useful purpose would be accomplished by reviewing in this opinion the trial court's decision that abandonment of the child by his natural father, remarriage by the mother, adoption of the child by the stepfather, and the existence of significant animosity between the child's parents and the natural father's parents is not a sufficient change of circumstances.

*Id*.

In *In re Thompson*, White was the same-sex partner of Thompson, the biological mother of a minor child. *Thompson*, 11 S.W.3d at 915. White and Thompson had been partners since 1987, and decided to "hav[e] a child together." *Id.* Thompson successfully underwent artificial insemination in 1992, and White contributed to her support during the pregnancy and after the child was born in 1993. *Id.* White also supported and cared for the child. *Id.* White and Thompson separated in 1994, but White continued to provide support and care to the child until Thompson interfered with the relationship between the child and White. *Id.* In 1996, White petitioned for visitation, asserting it was in the child's best interest for White to have ongoing visitation. *Id.* Thompson responded with a motion to dismiss, contending White lacked standing to assert visitation rights. *Id.* The trial court granted Thompson's motion, finding White lacked standing to bring the petition. *Id.* White appealed, and this Court affirmed, holding that, as White's claim was not based on a statutory right or a proceeding giving her a right to custody or control of the child, "the trial court . . . was correct in dismissing the nonparent's claim based upon lack of standing to assert such claims." *Id.* at 919. We concluded that, absent statutory authority providing for third-party right to visitation, parents retain the right to determine with whom their children associate. *Id.* at 923.

Thus, White simply had no claim to visitation rights, notwithstanding that she previously had provided care and support to the minor child. *Id.*

The parties currently before this Court have not raised the issue of standing, and in light of our disposition of this matter, we find it unnecessary to do so *sua sponte*. Ms. Harris-Lee has no statutory right to visitation with B.E.D. Moreover, although this appeal is from an order modifying visitation rather than from an initial award of visitation privileges, under *Simmons*, this Court must address the threshold question of whether Ms. Harris-Lee had a right to assert visitation.

In *Simmons*, which also was an appeal from an order modifying third-party visitation rights, the threshold analysis was whether there had been a showing of substantial harm justifying an award of grandparent visitation rights as prescribed by Tenn. Code Ann. § 36-6-306. Thus, the claim was established by statute; whether the statutory requisites had been met was the question before the court. In this case, the threshold inquiry is whether Ms. Harris-Lee has any statutory claim in the first instance. As she has no claim to visitation rights in the first instance, the question of the whether a showing of substantial harm is required is moot.

### *Conclusion*

In light of the foregoing, we vacate the order of juvenile court giving Ms. Harris-Lee visitation rights to B.E.D. and the "first right of refusal for babysitting said child in the event that the father needs a caregiver." Costs of this appeal are taxed to the Appellee, Ms. LaQuasha Harris-Lee.

_____
DAVID R. FARMER, JUDGE