IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

REGENIA ELLISON,

      Plaintiff-Appellee,

Vs.

CHERRI ELLISON,

      Defendant-Appellant.

Obion Chancery No. 20,453
C.A. No. 02A01-9803-CH-00064

**FILED**

**November 4, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

FROM THE OBION COUNTY CHANCERY COURT
THE HONORABLE WILLIAM MICHAEL MALOAN, CHANCELLOR

Lance E. Webb of Union City
For Appellant

John Knox Walkup, Attorney General and Reporter
Ronald W. McNutt, Assistant Attorney General

*REVERSED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

      This appeal involves a petition for grandparent visitation filed by plaintiff, Regina Ellison, paternal grandmother of Garrett Ellison and Ethan Wayne Ellison, minor children of defendant, Cherri Ellison, and Terry Ellison, deceased. After an evidentiary hearing, the trial

court granted visitation. Cherri Ellison (Mother) has appealed and presents the following issues for review as stated in her brief:

> 1. Whether Tenn. Code Ann. § 36-6-306 is unconstitutional because it authorizes courts to order grandparent visitation upon a finding that such visitation is in the "best interest" of the child without first requiring the finding of a danger of substantial harm to the child.

> 2. Whether the evidence preponderates against the trial court's award of visitation rights to the appellee.

T.C.A. § 36-6-306, passed by the legislature in 1997, provides as pertinent to our inquiry:

> **36-6-306. Visitation rights of parents of deceased or divorced parents.** - (a) If:
> (1) Either the father or mother of an unmarried minor child is deceased;
> (2) The child's father and mother are divorced or legally separated;
> (3) The child's father or mother has been missing for not less than six (6) months; or
> (4) The court of another state has ordered grandparent visitation;
> then, the parents of such deceased person or the parents of either of such divorced or separated persons or the parents of the missing person may be granted reasonable visitation rights to the child during its minority by a court of competent jurisdiction upon a finding that such visitation rights are in the best interests of the minor child, based on the factors in § 36-6-307(d)(2).

> \*  \*  \*

T.C.A. § 36-6-306 (Supp. 1998).

The factors referred to above in T.C.A. § 36-6-307(d)(2) are:

> (2) In determining the best interest of the child under this section, the court shall consider a number of factors, including but not limited to the following:
> (A) The length and quality of the prior relationship between the grandparent and the child;
> (B) The existing emotional ties of the child to the grandparent;
> (C) The preference of the child if the child is determined to be of sufficient maturity to express a preference;
> (D) The effect of hostility between the grandparent and the parent on the child manifested before the child, and the willingness of the grandparent, except in case of abuse, to encourage a close relationship between the child and the parent(s) or guardian(s) of the child;
> (E) The good faith of the grandparent in filing the petition;
> (F) If the parents are divorced or separated, the time-sharing arrangement that exists between the parents with respect to the child; and
> (G) If one (1) parent is deceased or missing, the fact that the grandparents requesting visitation are the parents of the deceased or missing person.

T.C.A. § 36-6-307(d)(2) (Supp. 1998).

2

In *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993), our Supreme Court considered a constitutional challenge to T.C.A. § 36-6-101, a predecessor to the present grandparent visitation statute, that provided for "reasonable visitation" with grandparents if it is "in the best interest of the minor child." The issue involved the constitutionality of the statute as it applies to the decision of married parents to deny paternal grandparents visitation with their grandchildren. The Court held that:

> Article I, Section 8 of the Tennessee Constitution protects the privacy interest of these parents in their child-rearing decisions, so long as their decisions do not substantially endanger the welfare of their children. Absent some harm to the child, we find that the state lacks a sufficiently compelling justification for interfering with this fundamental right. When applied to married parents who have maintained continuous custody of their children and have acted as fit parents, we conclude that court interference pursuant to T.C.A. § 36-6-301 constitutes an unconstitutional invasion of privacy rights under the Tennessee Constitution.

*Id.* at 582.

In *Simmons v. Simmons*, 900 S.W.2d 682 (Tenn. 1995), the Supreme Court followed its decision in *Hawk* and applied its previous holding to a case where paternal grandparents were seeking visitation after their son's parental rights had been terminated. The child's mother had remarried, and her second husband had adopted the child. The Court noted that in *Hawk* the need to protect the child from a substantial danger or harm was a compelling state interest sufficient to overrule parents' decisions. The Court then defined the issue as "whether the child in this case is exposed to a substantial danger of harm, which justifies the intervention of the Court into the parents' child-rearing decisions." *Id.* at 684-85. The Court held:

> Since the record shows that the threshold issue - danger of substantial harm - has not been established, the appellant and the adoptive father are entitled to constitutional protection of their parental rights.

*Id.* at 685.

In *Floyd v. McNeely*, No. 02A01-9408-CH-007, 1995 WL 390954 (Tenn. App. W.S., July 5, 1995), this Court considered a grandparent visitation case with facts quite similar to the case at bar. The primary issue before the Court was whether T.C.A. § 36-6-301 was unconstitutional as applicable to the facts of that case. The Court ruled:

> In keeping with the *Hawk* and *Simmons* decisions, this
> court may only intervene with McNeely's decision to prevent her
> children from reestablishing a relationship with their paternal

3

> grandmother if the record before us indicates that the children are threatened with a substantial danger of harm. Our review of this record does not lead us to this conclusion. Thus, we find that it is within McNeely's fundamental right as a parent to prevent contact between her children and their grandmother.

*Id*. at *4.

In *Hilliard v. Hilliard*, No. 02A01-9609-CH-00230, 1997 WL 61510 (Tenn. App. W.S., Feb. 14, 1997) this Court again considered the question of grandparent visitation in a somewhat different circumstance. At the time the mother and father were divorced, temporary custody of the minor child was awarded to the maternal grandmother, with whom the mother was living at the time. The mother later moved out of the state to live with her present husband, and the father filed a petition for modification of the decree to award him custody of the child. The father was awarded custody of the child, and the maternal grandmother was granted visitation with the child every other weekend. The father appealed from that part of the order allowing the grandmother visitation. The Court, following the decisions in *Hawk*, *Simmons*, and *Floyd*, remanded the case to the trial court for further proceedings to make a threshold determination of whether there was substantial danger of harm to the child if there was a cessation of the relationship between the child and the maternal grandmother. *Id.* at *4. The Court noted that the underlying holding in all of the cases relied upon is that parents possess a constitutional right of privacy in parenting decisions not subject to interference from the state absent a showing of substantial harm for the child. *Id*. at *3.

The statutes under consideration in the previous cases referred to, and the statute under consideration in the case at bar, are essentially the same inasmuch as they both provide for reasonable visitation rights upon a finding that the visitation rights are in the best interest of the minor child. Our Supreme Court in *Hawk* and in *Simmons* determined that there must be an initial showing of harm to a child before the Court may intervene to determine the best interest of the child. The Court in *Hawk* specifically held:

> When applied to married parents who have maintained continuous custody of their children and have acted as fit parents, we conclude that court interference pursuant to T.C.A. § 36-6-301 constitutes an unconstitutional invasion of privacy rights under the Tennessee Constitution.

855 S.W.2d at 582.

The cases subsequent to *Hawk* indicate that there is no real difference between the rights

4

of a single parent, and both parents, under these circumstances. In view of the almost identical language of the previous statute and the present statute allowing visitation if in the best interest of the minor child, we are compelled to follow the holding in *Hawk*. Therefore, we hold that the language of T.C.A. § 36-6-306, allowing reasonable visitation rights upon a finding of the best interest of the minor child, "constitutes an unconstitutional invasion of privacy rights under the Tennessee Constitution."[1]

The judgment of the trial court is reversed, and the case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellee. The second issue is pretermitted.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**


_____
**ALAN E. HIGHERS, JUDGE**


_____
**DAVID R. FARMER, JUDGE**

---

[1] The trial court voiced the same opinion but, because the Attorney General was not properly before the Court, declined to rule on the constitutionality of the statute.

5