# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

TIMOTHY SHAUN McCLURE,   )
 )
    Plaintiff/Appellant,   )   Fayette Chancery No. 11726 R.D.
 )
**v.**   )
 )
STACY DAWN McCLURE,   )   Appeal No. W1998-00804-COA-R3-CV
 )
    Defendant/Appellee.   )

**FILED**

**March 2, 2000**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

## APPEAL FROM THE CHANCERY COURT OF FAYETTE COUNTY
## AT SOMERVILLE, TENNESSEE

### THE HONORABLE DEWEY C. WHITENTON, CHANCELLOR

For the Plaintiff/Appellant:

Charles M. Cary
Boliver, Tennessee

For the Defendant/Appellee:

Tim J. Thompson
Memphis, Tennessee

**AFFIRMED IN PART, REVERSED
IN PART AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCURS:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

**OPINION**

This is a divorce case. The trial court awarded the husband sole custody of the parties' children and ordered the wife to pay child support. Supervised visitation was awarded to the wife, and visitation was also awarded to the maternal grandmother and great-grandmother. The trial court also ordered that the marital home be sold, with the proceeds divided between the parties. We affirm the award of custody to the husband, reverse the award of visitation to the maternal grandmother and great-grandmother, reverse the order that the marital home be sold, and remand.

Plaintiff/Appellant, Timothy McClure ("Husband"), and Defendant/Appellee, Stacy McClure ("Wife"), were married on June 3, 1990. The parties have two children, William Nicholas McClure, born February 20, 1991, and Morgan Taylor McClure, born April 12, 1996.

On the night of October 3, 1996, Wife was arrested after allegedly abusing the two children, who were then six years old and five months old. The district attorney general in the case charged that Wife became intoxicated and beat William. She then began to stab with a knife around the bed where infant Morgan lay. The district attorney general stated that William slipped away from his mother and ran next door to get his uncle, Husband's brother. The uncle saw marks on William's body and went to the parties' house to investigate. When the uncle walked up to the front door, Wife allegedly met him intoxicated and completely undressed. Wife was arrested and charged with child abuse.

Wife denies the charge, stating that she was not intoxicated on the night of the incident. She claimed that William had been playing with a knife around infant Morgan, and that she stabbed the mattress with the knife to show William how the knife could injure the baby. Nevertheless, Wife pleaded *nolo contendere* to one count of child abuse, a Class D felony, on January 8, 1997.

Immediately after the incident, Husband and Wife separated. On October 4, 1996, the day after the incident, the Fayette County Juvenile Court issued an order awarding sole custody of the parties' two children to Husband. On October 8, 1997, the same court issued a temporary restraining order prohibiting Wife from returning to the parties' home. Since then, Husband has maintained sole custody of the children.

On October 8, 1996, Husband filed a complaint for divorce in the Fayette County Chancery Court. Husband asked for a divorce on the basis of Wife's inappropriate marital conduct or, in the alternative, due to irreconcilable differences between the parties. He asked that he be awarded custody of the parties' children, that Wife be ordered to pay child support, that she have no visitation

rights, and that he be awarded the marital home. Wife counter-filed for divorce on October 29, 1996. She sought custody of the parties' children and child support from Husband, and asked the trial court to equitably divide the parties' real and personal property.

On November 7, 1996, Wife filed a motion for visitation. Wife asked that visitation take place in the home of the children's maternal great-grandmother, Marie Anderioli ("Great-Grandmother"), and under her supervision. By telephone conference on May 9, 1997, the Fayette County Chancery Court granted Wife supervised visitation with the parties' children. No copy of the order is included in the record on appeal. At trial, Wife asserted that frequently Husband permitted her to see the children only at his house or at his parent's house, and that Husband and his family were disruptive during her visitation. Husband maintained that Great-Grandmother often failed to supervise Wife's visitation, as required by the trial court's order.

On January 17, 1997, the trial court entered an order requiring Husband, Wife, and their older child to undergo psychological evaluation and counseling with Peter W. Zinkus, Ph.D. The purpose of the evaluation was to determine fitness for custody and visitation. After the consultation, Dr. Zinkus recommended that Wife receive full weekend visitation on alternating weekends supervised by the maternal grandmother, Linda Strawn ("Grandmother"). Dr. Zinkus recommended that Wife continue her psychiatric treatment and refrain from using alcohol during visitation periods.

On April 25, 1997, Grandmother and Great-Grandmother filed a corrected intervening petition for visitation. In the corrected petition, Grandmother and Great-Grandmother requested that they be awarded visitation with the children in addition to their supervision of Wife's visitation. Husband opposed the intervening petition for visitation.

On June 10, 1997, Wife was arrested for driving under the influence of alcohol. Six days later, she was admitted to the Memphis Mental Health Center, where she remained a patient for next twenty-eight days. The record on appeal contains no documentary evidence on the resolution of the DUI charge; however, Wife testified that the charge was eventually expunged. Wife also testified that charges of reckless driving and public drunkenness were dismissed in July and August of 1994. Wife said that she attended meetings of Alcoholics Anonymous twice a week and that she saw a psychiatrist approximately every three weeks.

On November 13, 1997, the trial court heard testimony in the case. The only witnesses were Husband, Wife and Great-Grandmother. Husband testified that, since the parties' separation, he has

continued to live with the children in the marital home. Husband's parents live near the home. Immediately after the separation, Husband's parents took care of the children because Husband worked during the day. However, Husband obtained a job which permits him to spend more time with the children. He asserted that he had provided for all of their needs since the parties' separation, with little financial support from Wife.

Wife testified that Husband had not adequately cared for the children since the parties' separation. She asserted that Husband failed to get prompt medical care for the children in several instances, and expressed concern about Husband's corporal punishment of the children. Wife acknowledged that she has not paid any child support to Husband since the parties separated. She admitted that she lived in a condominium on a golf course, which she paid for with money from part-time jobs and from her parents. She testified that she bought a new Ford Mustang after the parties separated. At the time of trial, Wife was employed, earning approximately $335.00 per week. In a later pleading, however, Wife stated that she had lost her job.

The parties disputed the value of the marital home. The Fayette County Tax Assessor appraised the home in 1997 at $39,300, with a pay-off amount of approximately $39,764.15. Husband testified that there was no equity in the home. Wife testified that First Tennessee Bank appraised the home in 1995 at $58,000. She asserted that significant improvements were made to the home after the 1995 appraisal.

Both Wife and Great-Grandmother testified that Husband and his family interfered with Wife's visitation. Great-Grandmother testified that she supervised Wife's visitation since the parties' separation and that she would be willing to do so in the future. Husband denied any interference and asserted that he tried to make Wife's visitation "as pleasant as possible." He acknowledged that both Grandmother and Great-Grandmother enjoyed close relationships with the parties' children before the separation. He had no objection to either Grandmother or Great-Grandmother supervising Wife's visitation in the future.

On December 29, 1997, the trial court entered a "Final Decree of Divorce." The decree granted a divorce to both Husband and Wife and awarded Husband "temporary custody and control" of the parties' two minor children. Wife was granted visitation on alternating weekends, supervised by Great-Grandmother, and was required to pay child support and back child support to Husband. The decree ordered that all of the marital property, including the parties' home, be sold and the net

3

proceeds divided equally if the parties were not able to agree on an alternative arrangement within sixty days from the entry of the decree. Finally, Dr. Zinkus was ordered to submit a follow-up report to the trial court by September 1, 1998.

On January 26, 1998, Husband appealed the "Final Decree of Divorce." On January 29, 1998, Wife filed a motion to alter or amend the decree, alleging that the trial court entered the order without the benefit of a full report from Dr. Zinkus and that the court did not specify when the parties should meet with Dr. Zinkus for a follow-up visit, and seeking a reduction in Wife's child support obligation because she lost her job after the hearing. Husband opposed Wife's motion to alter or amend the judgment and filed a motion to terminate or restrict visitation, alleging that Great-Grandmother was not supervising visitation, and asserting that the Memphis Rape Crisis Center had determined that Morgan's rectum had been penetrated following visitation with Wife on January 23, 1998. Wife responded to Husband's allegations of sexual abuse by requesting the trial court place Morgan in State custody pending an investigation. Subsequently, Grandmother and Great-Grandmother filed a supplemental intervening motion requesting visitation rights in addition to supervision of Wife's visitation.

On April 30, 1999, the trial court entered an order denying Wife's motion to alter or amend and disposing of all other motions filed prior to January 29, 1998. The trial court expressly affirmed that the "Final Decree of Divorce" entered on December 29, 1997, was a final judgment under Rule 54.02 of the Tennessee Rules of Civil Procedure. The order added that, ". . . as visitation, child custody, and child support are always subject to modification by the trial court[,] . . . any motion filed . . . after January 29, 1998, concerning visitation, child custody, or child support may be set for hearing if the parties so desire . . . ." In the interim, the order provided that Wife would be allowed to telephone the children at Husband's home and that "the [Wife], her mother and her grandmother may visit with the minor children in the home of the [Husband]."

Husband now appeals the trial court's "Final Decree of Divorce" and the order entered on April 30, 1999. On appeal, Husband argues that the trial court erred in awarding him "temporary" custody of the children instead of permanent sole custody, that the trial court erred in awarding visitation to Grandmother and Great-Grandmother, that the trial court erred in not awarding the divorce to him, and that the trial court erroneously ordered that the marital home be sold.

4

Husband first argues that the trial court should have awarded him sole permanent custody of the parties' two children instead of "temporary" custody. Husband maintains that an award of permanent custody is appropriate in light of Wife's history of child abuse, alcohol abuse, and failure to pay child support. Wife does not challenge the trial court's award of custody to Husband, but argues that an award of "temporary" custody was justified by Husband's failure to get prompt medical attention for the children, his corporal punishment of the children, and his statements in front of the children that Wife is an alcoholic.

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. *See* Tenn.R.App.P. 13(d).

The issue of child custody is reviewed *de novo*, with a presumption of correctness in the trial court's findings of fact, unless the evidence preponderates against them. *See* Tenn.R.App.P. 13(d). The welfare and best interest of the child are the primary concerns in child custody proceedings. *See* Tenn. Code Ann. § 36-6-106 (Supp. 1999); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. App. 1997). The trial court must also consider the factors set forth in Tennessee Code Annotated § 36-6-106. The determination of the child's best interests must turn on the particular facts of each case. *See Taylor v. Taylor*, 849 S.W.2d 319, 326 (Tenn. 1993).

The trial court granted Husband "temporary custody and control" of the parties' children in its "Final Decree of Divorce." Though the decree also required a follow-up psychological report, the custody award was not contingent upon the results of the report nor was it tied to any other date or event. By subsequent order, the court clarified that the "Final Decree of Divorce" was a final judgment subject, as always, to future modification by the trial court. The order noted that the parties were free to appeal the court's custody, visitation, or child support determinations.

Taken together, the trial court's order of December 29, 1997, awarding Husband "temporary custody" of the children, and the order of April 30, 1999, making the December 1997 order final, must be deemed simply an award of sole custody to Husband. While Husband chafed at the trial court's failure to use the word "permanent" in the April 1999 order, the trial court clearly intended that the custody award be as permanent as such awards ever get. The trial court noted, as set forth by statute, that any award of custody "remains[s] within the control of the court and . . . subject to

such changes or modification as the exigencies of the case may require." Tenn. Code Ann. § 36-6-101(a)(1)(Supp. 1999). Therefore, the trial court's award of custody to Husband is affirmed.

Husband next argues that the trial court erred in allowing Grandmother and Great-Grandmother to intervene and in making an award of visitation to them. He asserts that there are no circumstances in this case warranting an award of grandparent or great-grandparent visitation. Wife argues that the visitation award as a whole was within the trial court's discretion.

Tennessee Code Annotated § 36-6-306 provides for "reasonable" grandparent visitation if the minor child's parents are divorced or legally separated and if visitation is in the "best interests of the minor child. . . ."[1] Tenn. Code Ann. § 36-6-306(a)(Supp. 1999).

The statutes addressing grandparent visitation are, of course, subject to the parent's constitutional right to privacy. In *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993), the Tennessee Supreme Court discussed the constitutionality of Tennessee Code Annotated § 36-6-301, the statutory predecessor to Section 36-6-306. As in Section 36-6-306, the predecessor statute permitted a court award of grandparent visitation if the court found that such visitation was in the best interests of the child. In determining the constitutionality of the statute, the Court in *Hawk* found as follows:

> We hold that Article I, Section 8 of the Tennessee Constitution protects the privacy interests of these parents in their child-rearing decisions, so long as their decisions do not substantially endanger the welfare of their children. Absent some harm to the child, we find that the state lacks a sufficiently compelling justification for interfering with this fundamental right.

*Hawk*, 855 S.W.2d at 582. Thus, under *Hawk*, a grandparent may not be awarded visitation in the absence of a finding that the failure to award such visitation would result in substantial harm to the child. While *Hawk* involved an intact family, its reasoning has been applied to other situations in which the parents are not married. *See Simmons v. Simmons*, 900 S.W.2d 682, 684 (Tenn. 1995)(paternal grandparents seeking visitation after father's parental rights terminated, mother remarried, and step-father adopted child); *Hilliard v. Hilliard*, No. 02A01-9609-CH-00230, 1997 WL 61510, at *4 (Tenn. Ct. App. Feb. 14, 1997)(maternal grandparent seeking visitation when child's parents were divorced and father was granted custody); *McVay v. Blen*, No. 02A01-9508-JV-00183, 1996 WL 729911, at *3 (Tenn. Ct. App. Dec. 19, 1996)(paternal grandparents seeking

---

[1]It must be noted that this statute addresses visitation for the child's grandparent, not the great-grandparent. There is no authority in Tennessee addressing visitation by a great-grandparent.

visitation with child born out of wedlock but subsequently legitimated by father); ***Floyd v. McNeely***, No. 02A01-9408-CH-00187, 1995 WL 390954, at *4 (Tenn. Ct. App. July 5, 1995)(paternal grandmother seeking visitation where parents were divorced and father subsequently died); ***Stephenson v. West,*** No. W1998-00668-COA-R3-CV, 2000 WL 2899, at *8-9 (Tenn. Ct. App. Jan. 13, 2000) (maternal grandmother and step-grandfather seeking visitation after mother died and father remarried).

In ***Ellison v. Ellison***, 994 S.W.2d 623 (Tenn. Ct. App. 1998), *perm. to appeal denied* (June 14, 1999), this Court considered the constitutionality of Tennessee Code Annotated § 36-6-306 (Supp. 1999). ***Ellison*** involved the decision of a widowed mother to deny the paternal grandparents visitation with their grandchild. *Id.*, 994 S.W.2d at 623. In view of the fact that the language in this statute is virtually identical to that of the predecessor statute considered in ***Hawk*** and its progeny, this Court held that Tennessee Code Annotated § 36-6-306 was an unconstitutional invasion of the parent's right to privacy. ***See Ellison*** at 625.

Thus, under the reasoning in ***Hawk*** and subsequent cases applying ***Hawk***, including ***Ellison***, in order to award visitation to Grandmother, the trial court was required to find that failing to award visitation to Grandmother would result in substantial harm to the children. In this case, no allegation of substantial harm was made in the pleadings or the testimony at trial. Consequently, the award of visitation to Grandmother was erroneous. As noted above, there is no statutory basis for an award of visitation to Great-Grandmother under the circumstances of this case, and this award of visitation was erroneous as well. The trial court's decision to award visitation to Grandmother and Great-Grandmother must be reversed. Reversal of the award of visitation does not affect the trial court's order on supervision of Wife's visitation with the children.

Husband next argues that the trial court should have awarded him an absolute divorce on the grounds of inappropriate marital conduct. He maintains that the trial court erred in granting the divorce to both Husband and Wife. Wife argues that evidence of Husband's corporal punishment of the children and of his interference with Wife's visitation was sufficient to support the trial court's divorce award to both parties.

Both Husband and Wife proffered evidence of the other's inappropriate behavior during the marriage. The trial court's determination of fault turned in part on its assessment of the witnesses' credibility. When the resolution of an issue in a case depends on the truthfulness of witnesses, the

trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decided on that issue. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995). Considering the evidence in the record, we cannot conclude that the trial court erred in awarding the divorce to both Husband and Wife. The decision of the trial court is affirmed on this issue.

Finally, Husband argues that the trial court failed to equitably divide the parties' marital property. Husband contends that he should have been granted the marital home so that the children could continue to live in the home. Wife argues that the trial court's decision to sell the parties' home and divide the proceeds equally between the parties was appropriate and within the court's discretion.

Appellate review of a division of marital property is *de novo* upon the record with a presumption of the correctness of the trial court's findings of fact. *See* Tenn.R.App.P. 13(d). An appellate court may alter the trial court's division of property only if the trial court misapplies the law or if the evidence preponderates against the trial court's factual findings. *See Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994).

Tennessee Code Annotated § 36-4-121(c) requires the trial court to consider several factors in making an equitable division of marital property.[2] The trial court may award the family home and

_____

[2]Tennessee Code Annotated § 36-4-121(c) provides that the following factors be considered in making an equitable division of marital property:

> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
> (6) The value of the separate property of each party;
> (7) The estate of each party at the time of the marriage;
> (8) The economic circumstances of each party at the time the division of property is to become effective;
> (9) The tax consequences to each party; and
> (10) Such other factors as are necessary to consider the equities between the parties.

*Id.*

household effects to either party; however, the trial court must give special consideration to a spouse having physical custody of the children of the marriage. *See* Tenn. Code Ann. § 36-4-121(d).

It is undisputed that Husband has lived in the marital home with the parties' two children since they separated, and that Husband's parents live near the marital home and occasionally help care for the children.

Husband and Wife offered differing opinions about the value of the marital home. Wife testified that First Tennessee Bank appraised the home in 1995 at $58,000. Husband testified that the Fayette County Tax Assessor appraised the home in 1997 at $39,300. In light of the parties' dispute about the value of the home, the trial court included it with the parties' other property and ordered that it be sold and the proceeds divided equally between Husband and Wife.

We find that the circumstances in this case warrant according Husband, as the party with custody of the children, the special consideration required under Tennessee Code Annotated § 36-4-121(d), and that the trial court erred in ordering the marital home sold along with the parties' other property. Therefore, the decision of the trial court must be reversed, and the cause remanded for entry of an order dividing the marital property in a manner that permits Husband to retain the marital home. This may be accomplished by an award of the marital home to Husband, a valuation of the marital home and an order requiring Husband to pay Wife for a portion of the value of the home, or by any other adjustment in the overall division of marital property, in the discretion of the trial court.

In sum, we find that the trial court's orders amount to an award of sole custody of the parties' children to Husband, subject to the trial court's normal authority to modify if circumstances require. The trial court's decision to award visitation to Grandmother and Great-Grandmother is reversed. Reversal of the trial court's order on visitation to Grandmother and Great-Grandmother does not affect the trial court's order on supervision of Wife's visitation. The trial court's order that the marital home be sold and the proceeds divided between the parties is reversed, and the cause is remanded for entry of an order on division of the marital property that permits Husband to retain the marital home, in a manner in the discretion of the trial court. In all other respects, the decision of the trial court is affirmed.

The decision of the trial court is affirmed in part and reversed in part and remanded, as set forth above. Costs are taxed equally to Appellee, Stacy Dawn McCLure, and Appellant, Timothy Shaun McClure, for which execution may issue if necessary.

_____
HOLLY KIRBY LILLARD, J.

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**

_____
**ALAN E. HIGHERS, J.**