IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 13, 2002 Session

## IN RE: MADELAINE SIERRA REDMAN, RAY H. BOWEN, JR., and MARTHA L. BOWEN, v. NATHAN SCOTT REDMAN

**Direct Appeal from the Circuit Court for Hawkins County**
No. 9578     Hon. Kindall T. Lawson, Circuit Judge

**FILED JULY 22, 2002**

**No. E2001-02730-COA-R3-CV**

The Trial Court ordered limited visitation with minor child by grandparents. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., concurred and filed separate Concurring Opinion, and D. MICHAEL SWINEY, J., concurred.

Allan J. Coup, Mount Carmel, Tennessee, for Appellant.

Leslie W. Bailey, Jr., Kingsport, Tennessee, for Appellees.

**OPINION**

In this action for grandparents visitation, the Trial Judge ordered limited visitation with the minor child, age 9, with the plaintiffs, maternal grandparents. Both parties have appealed.

The father, defendant Nathan Redman, lived with his child Madelaine and her mother in the grandparents' home from the child's birth until she was two years old. He was never married to her mother. When they separated, he moved in with his parents who live approximately one quarter of a mile from the maternal grandparents. However, he remained involved with his daughter and paid child support to the mother.

The evidence shows that the maternal grandmother was highly involved with the granddaughter from her birth, and functioned as her primary caretaker during the child's early years.

The mother and child moved into their own apartment in November 1997, and while she was staying overnight with her grandparents on March 27, 1999, her mother and younger brother perished in an apartment fire. There was then a court proceeding involving the grandparents and the father, where the father received custody of Madelaine, who now resides with her father and paternal grandparents.

In the September 1999 custody proceeding, the Court ordered visitation of two days a week, which Order was later rescinded. Prior to the Order, the father was allowing the grandparents visitation of three days per week. Initially, after the fire, the grandparents kept the child after school in their home five days a week until the father got off work. She also spent several nights, including a weekend trip to Dollywood.

Difficulties with the relationship between the parties increased and the father decreased visitation. The father was especially concerned that visitation not occur in the presence of an older cousin who had sexually abused his daughter. Eventually, the father presented the grandparents nine written "visitation guidelines" of his expectations for their conduct during visitation. The grandparents found the guidelines "degrading and humiliating" and chose not to visit their granddaughter for two and a half months. Eventually, they agreed to the guidelines, under protest, and the father allowed one hour supervised visitations every other week.

The father testified that he had never refused some visitation with the grandparents, but was concerned that the grandparents were not supportive of his relationship with his daughter, and had lavished excessive gifts on the daughter and had not abided by his insistence that the cousin not come around his daughter during visitation. He testified that he had no plans to terminate all visitation, but it was his position that the Court had no basis to intrude upon his constitutionally protected parental rights and order grandparents visitation.

Dr. Judith Millington, a clinical psychologist, was called by the defendant and testified that the daughter was bright, sunny, doing excellent in school, and was in a very stable and comfortable relationship with her father. She further testified that the child was very close to the grandparents and was disappointed when they didn't visit her, but the witness opined that every two weeks was sufficient for a normal relationship, so long as the child had access to the grandparents, and knowing she could tell her father she would like to see them. The psychologist stressed that the child wanted a relationship without worrying about negative comments from her grandparents about her father, especially noting a comment that made her very upset when her grandmother said she could live with them when she got older. The witness further testified that reducing visitation had not caused a danger of substantial harm, and she thought the father's response was appropriate to the unannounced visit by the cousin. Because the grandparents do not believe the abuse occurred, despite substantial evidence, the psychologist recommended against any overnight visitation.

Dr. Millington opined that while more frequent visits would be nice, it was within the father's judgment, and that he is the proper person to decide the appropriate amount of interaction the daughter should have with her grandparents. However, in direct response to a question by the Court, she stated there would be substantial harm if the child did not see her grandparents at all.

The Trial Court, obviously relying heavily upon the expert opinion of the psychologist, ruled that the then current visitation was sufficient to prevent the danger of substantial harm.

The father has appealed, raising these issues:

1. Whether the petition for grandparent visitation should have been dismissed because it was filed under a prior version of the statute with certain language declared unconstitutional by *Ellison v. Ellison*, 994 S.W.2d 623 (Tenn. Ct. App. 1998) (permission to appeal denied 1999).

2. Whether the Court had subject matter jurisdiction within the meaning of the statute?

3. Whether the petition should have been dismissed at the close of plaintiff's proof?

4. Whether the evidence supports the Trial Court's finding that denial of court-ordered visitation will result in substantial harm to the child?

5. Whether the court-imposed grandparent visitation is in the best interests of the child?

The grandparents have raised these issues:

1. Whether the Court erred in failing to consider lay testimony to determine the appropriate amount of visitation adequate to avoid the danger of substantial harm to the child?

2. Whether the Court erred in finding two hours per month is sufficient visitation?

The statutes in effect at the time of trial and relied upon by the Court provide:

**Tennessee Code Annotated §36-6-306. Visitation rights of grandparents. -** (a) Any of the following circumstances, when presented in a petition for grandparent visitation to a court of competent jurisdiction, necessitates a hearing if such

grandparent visitation is opposed by the custodial parent or parents:

(1) The father or mother of an unmarried minor child is deceased;

(2) The child's father or mother are divorced, legally separated, or were never married to each other;

(3) The child's father or mother has been missing for not less than six (6) months;

(4) The court of another state has ordered grandparent visitation; or

(5) The child resided in the home of the grandparent for a period of twelve (12) months or more and was subsequently removed from the home by the parent or parents (this grandparent-grandchild relationship establishes a rebuttable presumption that denial of visitation may result in irreparable harm to the child).

(b)(1) In considering a petition for grandparent visitation, the court shall first determine the presence of a danger of substantial harm to the child. Such finding of substantial harm may be based upon cessation of the relationship between an unmarried minor child and the child's grandparent if the court determines, upon proper proof, that:

(A) The child had such a significant existing relationship with the grandparent that loss of the relationship is likely to occasion severe emotional harm to the child;

(B) The grandparent functioned as a primary care giver such that cessation of the relationship could interrupt provision of the daily needs of the child and thus occasion physical or emotional harm; or

(C) The child had a significant existing relationship with the grandparent and loss of the relationship presents the danger of other direct and substantial harm to the child.

(2) For purposes of this section, a grandparent shall be deemed to have a significant existing relationship with a grandchild if:

(A) The child resided with the grandparent for at least six (6) consecutive months;

(B) The grandparent was a full-time caretaker of the child for a period of not less than six (6) consecutive months; or

(C) The grandparent had frequent visitation with the child who is the subject of the suit for a period of not less than one (1) year.

(c) Upon an initial finding of danger of substantial harm to the child, the court shall than determine whether grandparent visitation would be in the best interests of the child based upon the factors in § 36-6-307. Upon such determination, reasonable visitation may be ordered.

(d)(1) Notwithstanding the provisions of § 36-1-121, if a relative or step-parent adopts a child, the provisions of this section apply.

(2) If a person other than a relative or a stepparent adopts a child, any visitation rights granted pursuant to this section before the adoption of the child shall

automatically end upon such adoption.

**36-6-307. Determination of best interests of child for grandparent visitations. -**
In determining the best interests of the child under § 36-6-306, the court shall consider all pertinent matters, including, but not necessarily limited to, the following:

(1) The length and quality of the prior relationship between the child and the grandparent and the role performed by the grandparent;

(2) The existing emotional ties of the child to the grandparent;

(3) The preference of the child if the child is determined to be of sufficient maturity to express a preference;

(4) The effect of hostility between the grandparent and the parent of the child manifested before the child, and the willingness of the grandparent, except in case of abuse, to encourage a close relationship between the child and the parent or parents, or guardian or guardians of the child;

(5) The good faith of the grandparent in filing the petition;

(6) If the parents are divorced or separated, the time-sharing arrangement that exists between the parents with respect to the child; and

(7) If one (1) parent is deceased or missing, the fact that the grandparents requesting visitation are the parents of the deceased or missing person.

The father does not argue that the statute relied upon by the Trial Court is unconstitutional, rather that when plaintiffs filed their petition in November 1999, Tennessee essentially had no statute in effect, because the grandparent visitation statute had been declared unconstitutional in *Ellison*, and the new statute did not become effective until June 14, 2000.

The *Ellison* Court found that the "best interest of the child" standard used in the 1997 statute was unconstitutional pursuant to *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993), which announced the standard as a threshold requirement of "danger of substantial harm" to the child. 994 S.W.2d 623 (Tenn. Ct. App. 1998). The Grandparent Visitation statute was subsequently amended to reflect the correct language. The doctrine of elision allows the Court to elide an unconstitutional portion of a statute and find the remaining provisions to be constitutional and effective. *Lowe's Companies, Inc. v. Cardwell*, 813 S.W.2d 428, 430 (Tenn. 1991). The 1997 Act contained a severability clause,[1] and eliding the language found objectionable by the *Ellison* Court, does not destroy the remainder of the statute.

At the time of trial, the existing statute set forth the legal standard to apply to the facts of this case, and this issue is without merit.

Next, the father argues that the Court lacked subject matter jurisdiction based upon

---

[1]House Bill 1660, Public Chapter No. 503, amending Tenn. Code Ann. §36-6-306 (1997), Public Acts.

the statutory language "... if such grandparent visitation is opposed by the custodial parent." Tenn. Code Ann. §36-6-306(a), and argues the Court has no jurisdiction because the father did not "oppose" grandparents' visitation, but merely insisted upon a reduction.

Jurisdiction is the lawful authority or power of the court to adjudicate controversies brought before it, and subject matter jurisdiction is conferred upon the courts by the Constitution and statutes. *Meighan v. U.S. Spring Communications,* 924 S.W.2d 632, 638 (Tenn. 1996). "Subject matter" relates to the nature of the cause of action and the relief sought. *Landers v. Jones*, 872 S.W.2d 674 (Tenn. 1994). It is not based upon the conduct of the parties. *See, Dishmon v. Shelby State Community College*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999). The Circuit Court has subject matter jurisdiction to adjudicate the issues.

Next, appellant argues that the Trial Court erred in not dismissing plaintiffs' case at the close of plaintiffs' case in chief. Following denial of a Rule 41 motion, the moving party may either stand on its motion and bring an appeal or present its evidence, it cannot do both. *Adelsperger v. Adelsperger,* 970 S.W.2d 482, 484 (Tenn. Ct. App. 1997). The defendant presented his evidence subject to his motion, and this issue is without merit.

Next, the defendant argues that the record does not support a finding by the Trial Court that there was danger of substantial harm if all visitation was denied. In this regard, we review the findings of fact made by the Trial Judge with a presumption of correctness, unless the evidence preponderates otherwise.

Tenn. R. App. P. 13(d). Tennessee Code Annotated §36-6-306(b)(1) provides:

(b)(1) In considering a petition for grandparent visitation, the court shall first determine the presence of a danger of substantial harm to the child. Such finding of substantial harm may be based upon cessation of the relationship between an unmarried minor child and the child's grandparent if the court determines, upon proper proof, that:
> (A) The child had such a significant existing relationship with the grandparent that loss of the relationship is likely to occasion severe emotional harm to the child;
> (B) The grandparent functioned as a primary care giver such that cessation of the relationship could interrupt provision of the daily needs of the child and thus occasion physical or emotional harm; or
> (C) The child had a significant existing relationship with the grandparent and loss of the relationship presents the danger of other direct and substantial harm to the child.

The Trial Court found that the child had "a significant existing relationship with the grandparents for five years, they being pretty much the primary parents". He further found that the child loves the grandparents and wants to see the grandparents, and she expressed disappointment

when they didn't visit. The Trial Judge then found there was a danger of substantial harm to the child "if she was not to have visitation with her grandparents". The evidence does not preponderate against his finding of facts, and is reinforced by the opinion of the expert offered by the father, that substantial harm would result if the child could not see the grandparents.

Finally, the husband argues that the best interest of the child requirement was not met pursuant to Tenn. Code Ann. §36-6-307. We believe the Trial Judge considered all the matters set forth in that statute, as well as the other matters which he took into consideration, and reached the right result. As a caveat, we join in the concerns expressed by the Trial Judge, i.e., "some other things that are going on that are not good for Madelaine, according to the testimony, she shouldn't be told things that are derogatory about her father and maybe also about her grandparents. She doesn't need that". This relates to one of the matters set forth in Tenn. Code Ann. §36-6-307(4): "The effect of hostility between the grandparent and the parent of the child . . .". This admonition by the Trial Judge to the parties we emphasize must be followed, and if ignored, could establish a basis to deny grandparent visitation altogether.

The grandparents argue the Trial Court was in error for not giving any weight to lay testimony about the amount of visitation.

It appears the Trial Court considered all of the evidence in analyzing the matters to be taken into account. In his findings, the Trial Judge observed ". . . I think, based on the evidence, I can only find that the visitation that is now in place . . . is sufficient to avoid substantial harm." The Trial Court in our view properly evaluated all of the evidence, and we find no error in his reliance on expert testimony in setting visitation.

Finally, the grandparents argue that an hour's visitation every two weeks is not sufficient. The burden was on the grandparents to offer proof to establish the need for more visitation. The evidence supports the determination of the Trial Judge as to the amount of visitation awarded. In conclusion, we adopt the language of the United States Supreme Court in *Troxel v. Granville*, 530 U.S. 57 (2000), where that Court observed:

> In an ideal world, parents might always seek to cultivate the bonds between grandparents and their grandchildren. Needless to say, however, our world is far from perfect, and in it the decision whether such an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance. And, if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination.

*Id.* at 70.

For the foregoing reasons, we affirm the Judgment of the Trial Court, and remand, with the cost assessed one-half to the grandparents Ray H. Bowen, Jr., and Martha L. Bowen, and

one-half to Nathan Scott Redman.

_____
HERSCHEL PICKENS FRANKS, J.