IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JUNE 9, 2005 Session

## GARY W. BAKER v. JOSEPH SMITH & DEBORAH SMITH
## In the Matter of: T.M.S., A Child Under 18 Years of Age

### Direct Appeal from the Juvenile Court for Shelby County
### No. L8793    Herbert J. Lane, Judge

---

### No. W2004-02867-COA-R3-JV - Filed August 5, 2005

---

In this appeal we are called upon to evaluate a juvenile court's decision regarding a petition to modify a previous custody order. The original custody order awarded custody of the minor child to the maternal grandparents over the objection of the natural father. At the conclusion of the hearing on the father's petition to modify custody, the juvenile court found that a material change in circumstances warranted a change in custody from the maternal grandparents to the natural father. The juvenile court also awarded the grandparents liberal visitation. The grandparents filed an appeal to this Court. We vacate the decision of the juvenile court and hold that the superior parental rights doctrine, not a material change in circumstances, is the standard which the juvenile court should have applied to the father's petition for a change of custody.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Vacated and Remanded

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Stuart B. Breakstone, Kathy D. Baker, Memphis, TN, for Appellants

William T. Winchester, Memphis, TN, for Appellee

# OPINION

## I.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Joseph Smith ("Grandfather") and Deborah Smith ("Grandmother") are the maternal grandparents (hereinafter collectively referred to as "Grandparents" or "Appellants") of T.M.S. (dob: 04/01/1999). Virginia Smith ("Mother") and Gary Baker ("Father" or "Appellee") are the biological parents of T.M.S. Father was seventeen (17) years of age at the time Mother gave birth to T.M.S.

On September 5, 2000, Grandparents filed a petition in the Juvenile Court of Shelby County alleging that Mother, their daughter, "failed to provide proper care, support, or supervision" to T.M.S. resulting in T.M.S. becoming dependent and neglected. Father subsequently filed a petition to intervene asserting that he should receive custody of T.M.S. After conducting a hearing,[1] the juvenile court referee submitted her Findings and Recommendations to the juvenile court stating that T.M.S. should be found to be dependent and neglected, Father's petition should be denied, Grandparents should receive custody of T.M.S., and Father should receive visitation. The juvenile court subsequently entered an order confirming the referee's findings. Thereafter, Father filed a request for a rehearing before the juvenile court judge. The juvenile court judge entered an order dismissing Father's petition and reaffirmed its original order. Neither party appealed this order.

On January 13, 2004, Father filed a petition in the juvenile court seeking to modify the custody arrangement previously set by the court. In his petition, Father asserted that a material change in circumstances warranted a changed in custody. After conducting a hearing, the juvenile court referee submitted her written Findings and Recommendations stating that custody of T.M.S. should be removed from Grandparents and awarded to Father, and Grandparents should receive visitation. The referee recommended that Father should receive custody of T.M.S. for a period of twelve (12) months under the protective supervision of the Memphis and Shelby County Community Service Agency ("CSA"). The juvenile court subsequently entered an order confirming the referee's findings.

Thereafter, Grandparents filed their request for a rehearing before the juvenile court judge. On October 14, 2004, the juvenile court conducted a rehearing in the matter. At the outset of the hearing, counsel for Father noted that, in the initial custody order, the juvenile court never entered a finding that Father was an unfit parent. After listening to the preliminary arguments of counsel, the juvenile court stated that, in examining Father's petition to modify custody, "there has to be shown a material change in circumstances as it relates to the child."

At the time of the hearing, Father was twenty-two (22) years of age, married, possessed a high school diploma, and both he and his wife had stable employment. At the hearing, he presented the results of voluntary drug screens, indicating that he and his wife were not taking drugs. Father

---

[1]The record filed with this Court on appeal does not contain a transcript of this hearing.

and his wife testified that they do not smoke. Father presented the court with certificates showing that he and his wife completed parenting classes. The evidence also demonstrated that Grandmother is a second grade teacher, and Grandfather is an instructor at the University of Memphis. T.M.S., who was five years old at the time of the hearing, had essentially been living with Grandparents since birth.

Father's decision to seek a modification of custody primarily centered around his discovery of two cigarette burns and bruises inflicted upon T.M.S. while in Grandparents' custody. Grandparents testified at the hearing and acknowledged that, since obtaining custody of T.M.S. from Mother, they have allowed Mother and her present boyfriend to have unsupervised visits with T.M.S. While Grandparents do not smoke, Grandfather testified that Mother does, but she does not smoke inside her house with T.M.S. present. The first cigarette burn occurred when T.M.S. apparently walked into a cigarette held by Mother during a visit, resulting in a burn to his hand. The second cigarette burn occurred approximately two to three years later during a visit to Grandmother's parents' house. Grandmother testified that, during this visit, T.M.S., who was not wearing a shirt at the time, ran into a cigarette held by her father, resulting in a burn to his chest. Father documented both burns by taking photographs during his visitation.

The parties also testified regarding bruises sustained by T.M.S. during unsupervised visits with Mother. Grandmother testified that Mother called her at work one day to inform her that she and boyfriend spanked T.M.S. with a belt the previous night. Grandparents proceeded to T.M.S.'s school where they discovered bruises on his buttocks. During the course of examining T.M.S., Grandmother testified that she thought he had a fever, and he reported having a stomach ache. As a result, Grandparents removed T.M.S. from school and took him to their home. According to Grandmother, she telephoned Father and rescheduled an upcoming visitation citing T.M.S.'s illness. Grandmother did not inform Father of the spanking or the bruises at that time.

During a subsequent visit, Father and T.M.S. were playing when T.M.S. sat down hard and indicated that his buttocks hurt. According to Father, when he inquired about the statement, T.M.S. stated that he was not supposed to show Father. When Father examined T.M.S., he noticed the bruising and documented it with photographs. Upon further inquiry, Father testified that T.M.S. stated that Mother and her boyfriend spanked him for not eating his spinach. After Father returned T.M.S. to Grandparents, T.M.S. told Grandparents that Father had taken photographs of his buttocks. Soon thereafter, Father received a phone call from Grandfather informing him of the incident. Grandfather subsequently sent a letter to Mother's boyfriend informing him that he had no authority to discipline T.M.S.

Lisa Coleman ("Ms. Coleman"), the CSA case manager assigned to the case, testified that T.M.S. did well in Grandparents' custody, and she concluded that there was not a material change in circumstances warranting a change in custody. Ms. Coleman admitted she had no prior knowledge of any cigarette burns before the hearing, but she stated that knowledge of these incidents would not change her conclusion because they were isolated events. Ms. Coleman also admitted that she had not personally investigated Father, and she had never been to his home. However, she testified that her predecessor did investigate Father and found nothing improper.

The juvenile court entered an order on October 21, 2004, providing, in relevant part, as follows:

> It appears to the Court that there has been a material change of circumstances sufficient to warrant a modification of custody. It further appears that it is in the minor child's best interests to place the child in the custody, care, and control of Father, with liberal visitation to the maternal Grandparents. . . .

No other findings of fact or conclusions of law were contained in the order. Grandparents subsequently filed a timely notice of appeal to this Court presenting, as we perceive them, the following issues for our review:

(1)     Whether the juvenile court erred by applying an incorrect legal standard when it awarded custody of the minor child to Appellee; and
(2)     Whether the trial court erred in finding that a material change in circumstances warranted a modification of custody when the preponderance of the evidence proves otherwise.

For the reasons set forth more fully herein, we vacate the trial court's order.

## II.
### STANDARD OF REVIEW

In reviewing the decision of the juvenile court on appeal, we are guided by the following standard of review:

> We review the trial court's conclusions of law "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). Furthermore, our review of the trial court's findings of fact is *de novo* upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *see also Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn. 1990). When the trial court makes no specific findings of fact, however, we must review the record to determine where the preponderance of the evidence lies. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

*Kendrick v. Shoemake*, 90 S.W.3d 566, 569-70 (Tenn. 2002).

## III.
### ANALYSIS

In their first issue presented to this Court for review, Grandparents contend that, although the juvenile court's order states that it found a material change in circumstances to exist, the court improperly considered Father's superior parental rights in reaching its decision. In support of this position, Grandparents point to several statements made by the juvenile court during the course of the proceedings below:

> THE COURT: Ma'am, do you ever think there's going to be a time when the father should be allowed to be a father to the child?
>
> . . . .
>
> THE COURT: Don't you think it gets harder on the boy every year though? I mean, he's five years old now. And the longer he stays with you and your husband, the more intringed [sic] he becomes there and the harder it becomes for him to go live with his father.
>
> . . . .
>
> THE COURT: . . . So this goes back to the same question I asked the grandmother. When do they become grandparents and allow the father an opportunity to be a father to this child?

Citing to our supreme court's decision in **Blair v. Badenhope**, 77 S.W.3d 137 (Tenn. 2002). Grandparents argue that a biological parent's superior parental rights cannot be considered when evaluating a petition to modify a previous custody order.

Conversely, Father asserts that the juvenile court could properly consider his superior parental rights when evaluating his petition to modify the previous custody order. He too relies on the **Blair** decision in support of his position, and he contends that the original custody order is invalid because the juvenile court ignored the superior parental rights doctrine in the original proceeding and never adjudicated him an unfit parent.

At the outset, we must address Grandparents' contention that the trial court incorrectly applied the superior parental rights doctrine when evaluating Father's petition to modify. As previously noted, Grandparents rely upon the statements by the court contained in the transcript of the hearing. In the final order, however, the court makes no mention of the superior parental rights doctrine. In fact, the juvenile court's order states that "[i]t appears to the Court that there has been a *material change of circumstances* sufficient to warrant a modification of custody." (emphasis added). This is consistent with the trial court's statement to counsel for the parties at the outset of the hearing to the effect that "there has to be shown a material change in circumstances as it relates to the child." In any event, we cannot look to the statements by the juvenile court at the hearing and make the inference Grandparents urge upon this Court. It is a well established rule in this state that a court speaks only through its written judgments, therefore, any oral pronouncements by a trial court are of no effect unless made a part of the written judgment. **Elmore v. Elmore**, No. E2004-00301-COA-R3-CV, 2004 Tenn. App. LEXIS 873, at *7 (Tenn. Ct. App. Dec. 29, 2004) (citing **State v.**

***Bough***, 152 S.W.3d 453, 462 (Tenn. 2004)); ***see also In re Adoption of Female Child***, 42 S.W.3d 26, 31 (Tenn. 2001) ("Moreover, the court speaks through its order, not through the transcript."). We find nothing in the order indicating that the juvenile court adopted any of its prior statements into the order. Accordingly, we must conclude that the trial court applied the material change in circumstances standard to Father's petition to modify the original custody order. However, our analysis of this issue cannot end at this point. Father, relying on the Grandparents' contention that the juvenile court applied the superior parental rights doctrine, has asserted that the doctrine should apply to an examination of his petition to modify the custody arrangement.

Both the United States and Tennessee Constitutions recognize the parents' fundamental right to raise their children as they see fit. ***Hawk v. Hawk***, 855 S.W.2d 573, 578-79 (Tenn. 1993). In an initial custody proceeding involving a parent and a non-parent, our supreme court has directed that the following two-prong standard must be applied:

> In a contest between a parent and non-parent, a parent cannot be deprived of the custody of a child unless there has been a finding, after notice required by due process, of substantial harm to the child. Only then may a court engage in a general "best interest of the child" evaluation in making a determination of custody.

***In re Askew***, 993 S.W.2d 1, 4 (Tenn. 1999). "[D]ue to the constitutional protection afforded the biological parents, the non-biological parent has the burden of establishing by clear and convincing evidence that the child will be exposed to substantial harm if placed in the custody of the biological parents." ***Hall v. Bookout***, 87 S.W.3d 80, 86 (Tenn. 2002) (citations omitted). The application of the "superior parental rights doctrine" to an initial custody decision involving a parent and a non-parent is well established in this state:

> The law is now well-settled that the Tennessee Constitution protects the fundamental right of natural parents to have the care and custody of their children. ***See Nale v. Robertson***, 871 S.W.2d 674, 680 (Tenn. 1994); ***Hawk v. Hawk***, 855 S.W.2d 573, 579 (Tenn. 1993). Through Article I, section 8 and its implicit recognition of parental privacy rights, our Constitution requires that courts deciding initial custody disputes give natural parents a presumption of "superior parental rights" regarding the custody of their children. ***See In re Askew***, 993 S.W.2d 1, 4 (Tenn. 1999). Simply stated, this presumption recognizes that "parental rights are superior to the rights of others and continue without interruption unless a biological parent consents to relinquish them, abandons his or her child, or forfeits his or her parental rights by some conduct that substantially harms the child." ***See O'Daniel v. Messier***, 905 S.W.2d 182, 186 (Tenn. Ct. App. 1995).

***Blair v. Badenhope***, 77 S.W.3d 137, 141 (Tenn. 2002); ***see also Doles v. Doles***, 848 S.W.2d 656, 660 (Tenn. Ct. App. 1992) ("the right of the parent is superior in a custody dispute between a parent

and a third party").

In *Blair v. Badenhope*, our supreme court addressed the standard to be applied to a request to modify a previous order awarding custody to a non-parent. *Blair*, 77 S.W.3d at 139. Following the death of the child's mother, the child's grandmother filed a petition seeking custody of the child. *Id*. The child's biological father initially contested the grandmother's petition, but he eventually agreed to a consent order placing custody of the child with the grandmother. *Id*. Shortly thereafter, the father filed a petition seeking to modify the previous custody order alleging a material change in circumstances. *Id*. at 140. He also asserted that, as the child's parent, he enjoyed a presumption of superior parental rights over the grandmother. *Id*. The trial court determined that no material change in circumstances existed to warrant a change in custody. *Id*.

On appeal, the father argued that "the doctrine of superior rights must be applied in modification cases, just as it is to be applied in original actions for custody." *Id*. at 141. Our supreme court disagreed, stating:

> [A] natural parent enjoys the presumption of superior rights under four circumstances: (1) when no order exists that transfers custody from the natural parent; (2) when the order transferring custody from the natural parent is accomplished by fraud or without notice to the parent; (3) when the order transferring custody from the natural parent is invalid on its face; and (4) when the natural parent cedes only temporary and informal custody to the non-parents. Consequently, when any of these circumstances are present in a given case, then protection of the right of natural parents to have the care and custody of their children demands that they be accorded a presumption of superior parental rights against claims of custody by non-parents.
>
> . . . .
>
> [P]arents in the initial custody proceedings enjoy a strong presumption that they are entitled to the physical custody of their children. However, having once protected the rights of natural parents to the care and custody of their children, no constitutional principle demands that natural parents again be afforded a presumption of superior rights in a subsequent modification proceeding. Of course, where an initial order does not exist, or is otherwise invalid, then the Constitution requires a court to apply the superior rights doctrine.
>
> . . . .
>
> Accordingly, we hold that a natural parent is not generally entitled to invoke the doctrine of superior rights to modify a valid custody order awarding custody to a non-parent. Instead, in the absence of extraordinary circumstances—for instance, the natural parent was not afforded an opportunity to assert superior parental

rights in the initial custody proceeding; the custody order is invalid on its face; the order is the result of fraud or procedural illegality; or the order grants only temporary custody to the non-parents— a trial court should apply the standard typically applied in parent-vs-parent modification cases: that a material change in circumstances has occurred, which makes a change in custody in the child's best interests. ***See, e.g., Nichols v. Nichols***, 792 S.W.2d 713, 715-16 (Tenn. 1990). As in all other cases, the burden of establishing these factors rests upon the party seeking the change in custody. ***See Rogero v. Pitt***, 759 S.W.2d 109, 112 (Tenn. 1988).

*Id*. at 143–48; ***see also Kendrick v. Shoemake***, 90 S.W.3d 566, 575 (Tenn. 2002) (applying the material change in circumstances standard to a petition to modify custody from one parent to the other parent). Finding the initial custody order to be valid, the supreme court determined that the father could not avail himself of the superior parental rights doctrine in the subsequent modification proceeding. ***Blair***, 77 S.W.3d at 146; ***see also Means v. Ashby***, 130 S.W.3d 48,57 (Tenn. Ct. App. 2003) (reiterating the difference between the standard applicable to an initial custody determination as opposed to a petition to modify when a non-parent is involved).

In the instant case, Father attempts to distinguish the present case from *Blair* by noting that, unlike the father in *Blair*, he did not voluntarily relinquish custody to Grandparents. In *Blair*, the father argued on appeal that he could assert his superior parental rights in the modification proceeding because he was never found to be an unfit parent by the lower court.[2] ***Blair***, 77 S.W.3d at 146. The supreme court addressed the effect of the father's decision to voluntarily relinquish custody to the grandmother in the initial proceeding, stating:

> [A] parent's voluntary consent to cede custody to a non-parent defeats the ability of that parent to later claim superior parental rights in a subsequent proceeding to modify custody. Presuming that a parent is afforded the opportunity to assert superior parental rights in the initial custody proceeding, then the parent's voluntary transfer of custody to a non-parent, with knowledge of the consequences of that transfer, effectively operates as a waiver of these fundamental parental rights. Under these circumstances, therefore, the Constitution does not again entitle the natural parent to assert superior parental rights to modify a valid custody order, even if no court has previously found the natural parent to be unfit.

*Id*. at 147–48. Father is correct in noting that, since voluntary relinquishment is not an issue in this case, it cannot be used as a justification for preventing him from asserting his superior parental rights in the modification proceeding.

---

[2]Naturally the juvenile court was not required to determine that the father in ***Blair*** was unfit or posed a substantial risk of harm to the child because the father voluntarily agreed to relinquish custody of the child to the grandparent. ***Blair***, 77 S.W.3d at 146.

Father also argues that this case presents one of the "extraordinary circumstances" alluded to in *Blair* which warrants the application of the superior parental rights doctrine in the modification proceeding. *Id*. at 148. Specifically, Father contends that the juvenile court, when issuing the initial custody order in 2000, ignored his superior parental rights by dismissing his petition, and the court never adjudicated him an unfit parent or concluded that he posed a substantial risk of harm to his child. Thus, it is apparent to this Court that Father, without citing any authority in support of his position on appeal, is arguing, in essence, that the juvenile court's original order awarding custody to Grandparents is invalid. If deemed invalid, then the juvenile court erred by not applying the superior parental rights doctrine to the Father's petition for a modification of custody. *See id.* We find Father's argument in this regard to be meritorious.

In response to the position taken by Father on appeal, Grandparents argue that, since Father received a presumption that his parental rights were superior to Grandparents' rights in the initial proceeding pursuant to the supreme court's decision in *Blair*, his rights as a biological parent were adequately protected, therefore, the initial custody order is valid. We cannot agree. The original custody order[3] entered in 2000 merely provides, in relevant part, as follows:

> 1.  The [Grandparents'] petition filed on September 28, 2000 be sustained.
> 2.  Said child(ren) is (are) dependent and neglected child(ren) within the meaning of the law of the State of Tennessee in that said child(ren)'s mother has failed to provide proper care, support or supervision.
>     . . . .
> 1.  That the Intervening Petition filed [by father] in this Court on September 28, 2000 be dismissed.

No additional findings of fact or conclusions of law were made by the juvenile court.[4]

As previously noted, an initial child custody dispute involving a biological parent and a non-parent requires the courts of this state to engage in a two-part inquiry. *In re Askew*, 993 S.W.2d 1, 4 (Tenn. 1999); *see also Nolen v. Nolen*, No. M2002-00138-COA-R3-CV, 2003 Tenn. App. LEXIS 546, at *6-7 (Tenn. Ct. App. Aug. 5, 2003). First, "[t]he magnitude of a parent's constitutional right to rear and have custody of his or her children would necessitate a *clear finding* of substantial harm" by the trial court. *Id.* (emphasis added). Once the trial court has made this initial finding, it must go further to determine that placing custody of the child with a particular individual is in the child's best interest. *Id.*

---

[3]This order consisted of the referee's findings which were confirmed by the juvenile court. After considering Father's petition for a rehearing, the juvenile court dismissed Father's petition and reconfirmed the previous order.

[4]We are mindful that we do not have a copy of the transcript of the hearing held in 2000 to review on appeal. However, as previously noted, the trial court is deemed to speak only through its written judgment. *Elmore v. Elmore*, No. E2004-00301-COA-R3-CV, 2004 Tenn. App. LEXIS 873, at *7 (Tenn. Ct. App. Dec. 29, 2004) (citing *State v. Bough*, 152 S.W.3d 453, 462 (Tenn. 2004)).

We are mindful that Father never appealed the juvenile court's initial custody order.[5] However, we find the supreme court's decision in *In re Askew* and subsequent decisions by this Court interpreting that decision to be controlling in this case. The supreme court's decision in *In re Askew* involved unique facts similar to those present in this case. The child's biological mother experienced financial problems shortly after the birth of her child, and she permitted a third party to care for her child. *Id.* at 1. In 1994, the third party filed a petition seeking custody of the child and simply alleged, as a justification for custody, that the child had been living with her since 1991. *Id.* at 1-2. The juvenile court subsequently awarded custody to the third party in a "perfunctory order" which did not contain any findings as to the biological parent's unfitness or dependency and neglect. *Id.* at 2. Shortly thereafter, the biological mother filed a petition in the juvenile court requesting that the earlier order be set aside since she did not receive proper notice of the hearing. *Id.* She also asserted that a material change in circumstances warranted a return of the child's custody to the mother. *Id.* The juvenile court concluded that the mother did not receive proper notice, and the court awarded the third party temporary custody of the daughter until such time as the biological parents could demonstrate they were able to care for the child. *Id.*

On appeal, this Court noted that the mother did not appeal the original order, and we cited its *res judicata* effect. *Id.* at 4. The supreme court disagreed and noted the absence of an implicit or explicit finding of substantial harm or dependency and neglect in the original order. *Id.* The supreme court, relying on the temporary nature of the language used in the original order, held that the original order did not constitute a final order. *Id.* As a result, the court held as follows:

> It appears that no valid initial determination was ever made that [granting the third party] custody of [the child] would result in "substantial harm" to the child. Absent such a finding, we conclude that the deprivation of the custody of her child has resulted in an abridgment of [the mother's] fundamental right to privacy. *Bond*, 896 S.W.2d at 548; *Nale*, 871 S.W.2d at 680; *Hawk*, 855 S.W.2d at 577. In light of the unique circumstances of this case, we believe that the Court of Appeals has misapplied modification of custody principles when no valid initial order depriving the natural mother of custody existed. In the absence of such a valid initial order, we believe that it would be unconstitutional for the natural mother to bear the burden of proving the absence of substantial harm. *Because the record does not show that a finding of substantial harm was made in this case, constitutional principles compel us to reverse the decisions*

[5]Since the original petition for custody filed by Grandparents was in the nature of a dependency and neglect proceeding, the juvenile court had exclusive jurisdiction. *See* Tenn. Code Ann. § 37-1-103(a)(1) (2003). "[A]ny appeal from any final order or judgment in [a]. . . dependent and neglect proceeding, filed under this chapter, may be made to the circuit court which shall hear the testimony of witnesses and try the case *de novo*. The appeal shall be perfected within ten (10) days, excluding nonjudicial days, following the juvenile court's disposition." Tenn. Code Ann. § 37-1-159(a) (2003); *see also In re M.J.B.*, 140 S.W.3d 643, 651 (Tenn. Ct. App. 2004) (outlining the procedure for appealing final orders in dependency and neglect cases). "Appeals from an order of the . . . circuit court pursuant to this subsection may be carried to the court of appeals as provided by law." Tenn. Code Ann. § 37-1-159(c) (2003).

*of the lower courts.*

*Id.* at 5 (emphasis added).

Admittedly, nothing in the initial order rendered by the juvenile court in this case suggests that it was intended to be temporary in nature or that the trial court intended to return custody of T.M.S. to Father at some later time. However, subsequent decisions rendered by this Court have relied on the analysis by the supreme court in *In re Askew* to hold that, if an original custody order does not include the requisite finding of substantial harm, it amounts to an invalid order and is not enforceable. *See Williams v. Thrailkill*, No. W1999-01032-COA-R3-CV, 2000 Tenn. App. LEXIS 718, at *11 (Tenn. Ct. App. Oct. 23, 2000) (relying on *In re Askew* to hold that an order which does not contain a finding of substantial harm to the child constituted an invalid order which cannot be enforced); *Heathman-Wood v. Wood*, No. M1999-00341-COA-R3-CV, 2000 Tenn. App. LEXIS 541, at *15-16 (Tenn. Ct. App. Aug. 16, 2000) (reasoning that, even though the initial order was not temporary as in *In re Askew*, it did not constitute a valid order since it failed to contain a finding that substantial harm to the child would result if placed in the custody of the father); *Engel v. Young*, No. M2001-00734-COA-R3-CV, 2003 Tenn. App. LEXIS 216, at *14 (Tenn. Ct. App. Mar. 14, 2003) (citing *In re Askew* for the proposition that an order which does not include the requisite finding of substantial harm is an invalid order).

Since the original custody order handed down by the juvenile court does not contain a clear finding that awarding custody of T.M.S. to Father would result in substantial harm to the child,[6] it amounts to an invalid order based on the aforementioned authorities. Since this case represents one of the "extraordinary circumstances" set forth in *Blair*, the juvenile court erroneously applied the material change in circumstances standard to Father's petition to modify the original custody order. *See Blair v. Badenhope*, 77 S.W.3d 137, 148 (Tenn. 2002). Instead, the juvenile court should have applied the presumption of superior parental rights which requires the Grandparents to prove, by clear and convincing evidence, that T.M.S. will be exposed to substantial harm if he is placed in the custody of Father. *See In re Askew*, 993 S.W.2d at 4; *Hall v. Bookout*, 87 S.W.3d 80, 86 (Tenn. Ct. App. 2002). While trial courts necessarily have broad discretion when fashioning a custody arrangement based on the unique circumstances present in an individual case, we must reverse such decisions when the lower court applies an incorrect legal standard. *See Engel v. Young*, No. M2001-00734-COA-R3-CV, 2003 Tenn. App. LEXIS 216, at *19 (Tenn. Ct. App. Mar. 14, 2003) (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)).

---

[6]This court has previously stated that a finding of substantial harm to a child may include a finding that a parent is unfit or that the child is dependent and neglected. *See Nolen v. Nolen*, No. M2002-00138-COA-R3-CV, 2003 Tenn. App. LEXIS 546, at *8 (Tenn. Ct. App. Aug. 5, 2003) (citing *In re Askew*, 993 S.W.2d at 4); *Ellington v. Maddox*, No. W2000-00948-COA-R3-CV, 2001 Tenn. App. LEXIS 159, at *17 (Tenn. Ct. App. Mar. 12, 2001) (citing *In re Askew*, 993 S.W.2d at 4). Any argument by Grandparents in this regard would not be meritorious. The initial order states that T.M.S. is depended and neglected since "*mother* has failed to provide proper care, support and supervision." (emphasis added). No finding was made, either implicitly or explicitly, regarding the adequacy of Father's care for T.M.S. Moreover, while the juvenile court's failure to make a finding of substantial harm is dispositive of the issues presented for our resolution, we also note that conspicuously absent from the initial order is a finding that placing custody of T.M.S. with Grandparents is in the child's best interest. *See In re Askew*, 993 S.W.2d at 4; *Nolen*, 2003 Tenn. App. LEXIS 546, at *6-7. Thus, the initial order of custody handed down by the juvenile court is defective in this regard as well.

Although we have determined that the juvenile court employed an incorrect legal standard in this case, a remand of this case to the juvenile court for further proceedings regarding the custody of T.M.S. is not warranted. Our *de novo* review of the record reveals that it is completely devoid of evidence which would indicate that Father is an unfit parent or that his having custody of T.M.S. poses a substantial risk of harm to the child.[7] In fact, the testimony of Grandparents solidifies our finding in this regard. Grandfather offered the following testimony at the hearing:

> Q. Okay. Now, what concerns do you have with [Father] regarding him having custody with his son?
>
> A. I think [T.M.S.] is being denied the bonding and the loving care and stable home environment that we were able to provide him.
>
> Q. So you're saying that [Father] doesn't have a stable home environment?
>
> A. No, I'm saying that when he has custody, it's to the exclusion of the other half of [T.M.S.'s] family that [T.M.S.] has been with ever since he's been born for over five years.

Grandmother offered the following opinion regarding a decision to return custody of T.M.S. to Father:

> THE COURT: Ma'am, do you ever think there's going to be a time when the father should be allowed to be a father to the child?
>
> THE WITNESS: Yes, sir, one day. I just don't think right now in his life it's the best thing for him.
>
> . . . .
>
> THE COURT: When do you think that would be? A year from now, two years from now, five years?
>
> THE WITNESS: I'm not sure. I'm not sure. I just don't think right now in his life it's the best thing for him.

Such testimony does not constitute the foundation upon which the juvenile court could build a decision that returning custody of T.M.S. to Father would pose a substantial risk of harm to this child.

Accordingly, we conclude that the juvenile court reached the correct result by returning custody of T.M.S. to Father, albeit for an erroneous reason. We vacate the juvenile court's order at issue on appeal, and we remand this case to the juvenile court for the entry of an order returning custody of T.M.S. to Father for the reasons set forth herein. As a result of our decision in this case, it is not necessary that we address the alternative issue raised by Grandparents on appeal.

---

[7]Although the juvenile court awarded custody to the Father for an incorrect reason, the court's decision to return custody of T.M.S. to Father further demonstrates the total absence of evidence indicating that Father is an unfit parent.

In light of our decision in this case, it is necessary that we also address the issue of Grandparents' visitation as set forth in the order.[8] After determining that Father should receive custody of T.M.S., the juvenile court also stated that Grandparents should receive "liberal visitation." The juvenile court included in the order a detailed visitation schedule to accomplish this goal.[9] This Court has previously stated as follows:

> A court may not award a non-parent visitation unless the non-parent can show that denial of visitation presented a substantial risk of harm to the child. *See Simmons v. Simmons*, 900 S.W.2d 682, 685 (Tenn. 1995). If an order granting visitation does not include a finding on the issue of substantial harm, that order is invalid. *See In re Askew*, 993 S.W.2d at 4.

*Engel v. Engel*, No. M2001-00734-COA-R3-CV, 2003 Tenn. App. LEXIS 216, at *14 (Tenn. Ct. App. Mar. 14, 2003). Nowhere in the juvenile court's order is there a finding that denying Grandparents visitation with T.M.S. would pose a substantial risk of harm to the child. Accordingly, we must vacate the order for this reason as well.

On remand, the juvenile court may conduct a new hearing to address this issue consistent with statutory and case law governing the grant of visitation to a non-parent. *See* Tenn. Code Ann. § 36-6-302, -306 (2003); *Simmons v. Simmons*, 900 S.W.2d 682 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993); *Ottinger v. Ottinger*, No. E2003-02893-COA-R3-CV, 2004 Tenn. App. LEXIS 459 (Tenn. Ct. App. July 21, 2004); *Hale v. Culpepper*, No. M2002-01955-COA-R3-CV, 2003 Tenn. App. LEXIS 899 (Tenn. Ct. App. Dec. 22, 2003); *Ellison v. Ellison*, 994 S.W.2d 623 (Tenn. Ct. App. 1998); *Hilliard v. Hilliard*, No. 02A01-9609-CH-00230, 1997 Tenn. App. LEXIS 105 (Tenn. Ct. App. Feb. 12, 1997); *Floyd v. McNeely*, No. 02A01-9408-CH-00187, 1995 Tenn. App. LEXIS 443 (Tenn. Ct. App. July 5, 1995). Should the juvenile court determine that granting visitation to Grandparents is consistent with such authority, the juvenile court may include this finding in the new order.

## IV.

---

[8]The Tennessee Rules of Appellate Procedure provide as follows:

> Review generally will extend only to those issues presented for review. The appellate court shall also consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review, and may *in its discretion* consider other issues in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process.

Tenn. R. App. P. 13(b) (2004) (emphasis added).

[9]At the conclusion of the hearing in this matter, the juvenile court instructed the parties to craft a proposed visitation schedule for Grandparents. The visitation schedule set forth in the juvenile court's order represents the court's adoption of Father's proposed visitation schedule as modified by the court.

## Conclusion

For the foregoing reasons, we vacate the juvenile court's order and remand this case to the juvenile court for entry of an order consistent with the findings in this opinion. Costs of this appeal are taxed to the Appellants, Joseph Smith and Deborah Smith, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE